IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 5, 2005 Session

## LENDEL L. CONLEY v. JO ANN CONLEY

**Appeal from the General Sessions Court for Bledsoe County**
**No. 1082     Howard L. Upchurch, Judge**

---

**No. E2004-01309-COA-R3  - FILED MAY 9, 2005**

---

In this divorce case, the wife raises the issues of whether the trial court erred in ruling it had jurisdiction based on the husband's domicile in Bledsoe County, Tennessee; whether the trial judge erred in refusing to recuse himself from the trial of the case; and whether the court erred by failing to equitably divide the marital estate.  The husband argues on appeal that the trial court should have classified certain assets that it held to be marital property as his separate property.  We modify the division of marital property to increase the amount awarded to the wife, and affirm the court's judgment in all other respects.

**Tenn. R. App. P.  3 Appeal as of Right; Judgment of the Trial Court Affirmed as Modified;**
**Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined. CHARLES D. SUSANO, JR., J., filed a separate concurring opinion.

Mitchell A. Byrd, Chattanooga, Tennessee, for the Appellant, Jo Ann Conley

Stephen T. Greer, Dunlap, Tennessee, for the Appellee, Lendel L. Conley

### OPINION

### *I. Procedural and Factual Background*

Lendel L. Conley ("Husband") and Jo Ann Conley ("Wife") were married on February 14, 1986.  At the time of the marriage, Husband was 65 years old and Wife was 38 years old.  No children were born of the marriage.  On January 2, 2001, Husband filed this action for divorce. At the time Husband filed for divorce, he was living at his home in Bledsoe County, Tennessee, and Wife was living in Florida.

On June 1, 2001, Wife filed a motion to dismiss, alleging that the trial court lacked jurisdiction pursuant to Tenn. Code Ann. § 36-4-104.  Wife filed an affidavit supporting her motion,

the essence of which was an argument that Husband neither resided in nor was he domiciled in Tennessee. On April 2, 2002, the trial court, after considering various competing affidavits, held that Husband had established that his domicile and residence was in Tennessee. The court overruled Wife's motion to dismiss.

Subsequent to this adverse ruling, and nearly sixteen months after Husband's initial complaint for divorce, Wife filed a motion requesting the trial judge to recuse himself. This motion stated in its entirety as follows:

> The Defendant [Wife] would show that there have been various communications between herself and Judge Upchurch concerning the situation with the Plaintiff [Husband]. The Defendant would further show that as a result of these conversations she communicated with Judge Upchurch by telephone and mail and was also renting space from Judge Upchurch for a period of several months.
> WHEREFORE, Defendant moves the Court for recusal in this case.

Judge Upchurch declined to recuse himself, finding no grounds to do so. Wife subsequently filed a *pro se* motion for change of venue, arguing that "she has a reasonable fear that she would not receive a fair trial in this venue." On August 13, 2002, Wife filed a *pro se* "motion to disqualify judge," alleging that "the Judge is biased and prejudiced against" her. The court overruled these motions.

The trial court heard the case on September 17 and 18, 2003. The contested issues primarily involved the classification, valuation and division of the parties' assets. The court held the vast majority of the estate to be marital property, and divided the marital estate so that Husband received assets valued at $1,877,644.48 (70.59% of the estate) and Wife received assets valued at $782,237.75 (29.41%).

## II. Issues Presented

Wife appeals, raising the following issues for our review:

1. Whether the trial court erred in ruling it had jurisdiction over the case due to the husband's domicile and residence in Bledsoe County, Tennessee.
2. Whether the trial judge erred in refusing to recuse himself from the trial of the case.
3. Whether the court erred by failing to equitably divide the marital estate.

In addition, Husband raises the issue of whether the trial court erred in classifying certain assets as marital rather than his separate property.

### III. Standard of Review

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn. 1993).

### IV. Jurisdiction to Grant Divorce

As the parties recognize, the issue of whether the court had jurisdiction to hear and grant a divorce is governed by Tenn. Code Ann. § 36-4-104, which provides in relevant part as follows:

> (a) A divorce may be granted for any of the aforementioned causes if
>
> the acts complained of were committed while the plaintiff was a bona fide resident of this state or if the acts complained of were committed out of this state and the plaintiff resided out of the state at the time, if the plaintiff or the defendant has resided in this state six (6) months next preceding the filing of the complaint.

This statute makes Tennessee residency by at least one of the parties a condition precedent to a court having jurisdiction to grant a divorce. The residency requirement in Tenn. Code Ann. § 36-4-104(a) "is intended to assure that Tennessee has a sufficient relationship with the parties and their marriage to make it reasonable for the courts of this state to affect the parties' marital status." *Barnett v. Barnett,* No. 01A01-9605-CH-00228, 1998 WL 787043 at *3, 1998 Tenn. App. LEXIS 765 at *8 (Tenn. Ct. App. M.S., filed Nov. 13, 1998).

Our courts have interpreted the term "residence" as used in Tenn. Code Ann. § 36-4-104(a) to be synonymous with "domicile." *Brown v. Brown,* 261 S.W. 959 (Tenn. 1924); *Wiseman v. Wiseman,* 393 S.W.2d 892, 895 (Tenn. 1965); *Barnett,* 1998 WL 787043 at *3. The Tennessee Supreme Court has defined "domicile" as follows:

> Domicile is defined as the place where a person has his principal home and place of enjoyment of his fortunes; which he does not expect to leave, except for a purpose; from which when absent, he seems to himself a wayfarer; to which when he returns, he ceases to travel. [Internal quotations omitted].

*Wiseman,* 393 S.W.2d at p.894. As this court stated in the *Barnett* case,

> To create domicile in Tennessee, a person ordinarily must not only intend to establish a personal home in this state but must also act consistently with this intention. *See Greene v. Greene,* 43 Tenn.App. 411, 429, 309 S.W.2d 403, 411 (1957). To acquire domicile here, the person must also have no present intention or expectation of changing his or her residence to some other state. *See Tate v. Collins,* 622 F.Supp. 1409, 1412 (W.D.Tenn.1985).
>
> \*            \*            \*
>
> In reviewing such questions [regarding domicile], we consider not only a person's declarations and conduct but also all other relevant facts and circumstances. *See Wiseman v. Wiseman,* 216 Tenn. at 708, 393 S.W.2d at 895.

*Barnett*, 1998 WL 787043 at \*3-4.

Wife filed an affidavit in support of her motion to dismiss for lack of jurisdiction, alleging the following in relevant part:

> At all times, both myself and Dr. Conley have claimed Florida as our permanent residence. Up to this point, there was never a question concerning the fact that Florida was our residence:
>
> 1. We have always filed Federal Income Taxes listing Florida as our residence. We have always, including the taxable year 1999, filed Florida Intangible Taxes listing Florida as our residence.
>
> 2. Both my husband and I are registered voters in the State of Florida and we participated and voted in the Brevard County, Florida 2000 elections. . .
>
> 3. My husband drives a white Chrysler automobile registered with Florida tags. My husband has a Florida drivers license listing Florida as his residence.
>
> 4. My husband maintains numerous professional memberships listing his residence in the State of Florida.
>
> 5. My husband's medical insurance is with the Florida Dental Association listing his residence as Florida.
>
> 6. My husband has never filed a State of Tennessee "Hall Income Tax return" always claiming Florida as his residence. . .

-4-

7. All Brokerage accounts owned by either myself, or my husband, list Florida as our residence.

8. My husband, Dr. Conley, has always maintained that there were substantial tax advantages to maintaining our residence in the State of Florida and by doing so, we could avoid the Income Taxes assessed against persons having interest and dividend income by the State of Tennessee.

Husband responded with his own affidavit, stating in pertinent part as follows:

1. . . .At the time of the filing of the above-described Complaint for Divorce, I had been a resident of Bledsoe County, Tennessee, for more than six months immediately prior thereto. I also maintain a place of abode at 930 South Courtenay, Merritt Island, Florida, but that place of abode is not my residence and was not my residence at the time of the filing of the Divorce Complaint in this cause.

2. The home in which I now reside in Bledsoe County, Tennessee, was constructed and finished in 1993. I have lived in that residence since that time up to the present. Before July of 1993, I lived in a smaller house located on the same real estate located in Bledsoe County, Tennessee, from December of 1990 up until July 1993.

3. It is my intent, and has been for more than six months immediately preceding the filing of the divorce in this cause, that the residence in which I live in Bledsoe County be my permanent and primary residence. I maintained a place of abode in the State of Florida for the purpose of visiting from time to time which I have done over the years. Since moving to Bledsoe County, I have been physically present and lived in Bledsoe County at least 80% of the time.

4. For at least six months immediately preceding the filing of the Divorce Complaint in this cause, I owned and operated two pick-up trucks with Tennessee Registration. . .

5. My wife, Jo Ann Conley, has on previous occasions advised me that there was a tax advantage to listing the State of Florida as our permanent residence on tax returns. I did not question her assertion and did not question her effort to have our residence shown as the State of Florida.

6. At the time of filing of the divorce in this cause, I continued to maintain and use a Florida drivers license. . .

7. Any listing of my address as the State of Florida was at my wife's insistence and instructions.

8. I currently maintain a post office box in Pikeville, Tennessee, Bledsoe County, where I receive mail and have so for the last six years. Prior to that time, I received my mail at a rural route address in Bledsoe County, Tennessee. . .

9. Since 1990 I have maintained telephone number and listing for Bledsoe County, Tennessee. . .Since approximately 1990, I have also maintained one or more bank accounts in Bledsoe County, Tennessee, where I have engaged in my principal banking activities.

Each party submitted other affidavits of their respective acquaintances, with Husband's witnesses attesting that he resided in Tennessee, and Wife's witnesses attesting that he intended to maintain his residence in Florida.

Following a hearing on March 22, 2002, the trial court considered the evidence and filed a memorandum opinion stating in relevant part as follows:

[T]he parties stipulated to the following facts in addition to those set forth in the affidavits:

1. That the parties constructed one or more houses on jointly owned real property in Bledsoe County, Tennessee, in 1990 and 1993;

2. That the Defendant [Wife] resides in the State of Florida at 930 South Courtnay [sic], Merritt Island, Florida;

3. That prior to the construction of the homes in Bledsoe County, the Plaintiff [Husband] also resided in and about Merritt Island, Florida;

4. That the [Husband] has spent a majority of his time and been physically present or lived in Bledsoe County a majority of the time from and after 1990 or 1993;

5. That the parties are registered to vote in Brevard County, Florida;

6. That the [Husband] maintains a Florida drivers license and has not sought or maintained a Tennessee drivers license;

-6-

7. That the address on [Husband's] federal income tax return is Merritt Island, Florida, rather than Tennessee;

8. That the [Husband] does not file a "Hall" income tax return as required for residents of the State of Tennessee;

9. That the [Husband] has a Chrysler New Yorker automobile, in his possession, registered in the State of Florida, and two trucks registered in Bledsoe County, Tennessee. One of these trucks is the [Husband's] primary vehicle.

\*   \*   \*

On the date the [Husband] filed his Complaint for Divorce, the Court finds that the [Husband] was living in Bledsoe County. The Court further finds that the [Husband] intended to establish his personal home in Bledsoe County as early as 1990 and that his actions were and have been consistent with his intentions. In addition to physically living in Bledsoe County, the [Husband] has vehicles in this county (two of which are registered and titled in Bledsoe County) as well as other significant tangible personal properties. It is true that the [Husband] retained ties to the State of Florida, including the maintenance of his voting registration and the continuation of a Florida drivers license, but this does not, in the Court's opinion, overcome the significant relationship created by the [Husband] with the State of Tennessee. The Court concludes, therefore, that the [Husband] was a bonafide resident of Tennessee when he filed his Complaint for Divorce in January of 2001, and that he met the residency requirement of T.C.A. § 36-4-104(a).

Wife's motion to dismiss was effectively a motion for summary judgment, *see* Tenn. R. Civ. P. 12.03. However, because the trial court elected to hold an evidentiary hearing on the matter, at which no witnesses testified but the important stipulations listed above were made, our review is *de novo* on the record. Tenn. R. App. P. 13(d); *Cho v. Jeong,* No. 03A01-9806-CV-00257, 1997 WL 306017 at *4, 1997 Tenn. App. LEXIS 407 at *10 (Tenn. Ct. App .E.S., filed June 6, 1997).

The evidence does not preponderate against the trial court's ruling that it had jurisdiction under Tenn. Code Ann. § 36-4-104(a). While the evidence presented by Wife regarding Husband's Florida voter registration, tax filing status and Florida driver's license certainly has bearing and relevancy on the question, and was properly considered by the trial court as a factor, it does not outweigh the fact that Husband has lived and "hung his hat" in Tennessee since 1990. The Supreme Court stated long ago that "[i]t is well settled that a party may have two or more residences, in the sense that he may have different places of abode, but he can have but one domicile." *Brown v. Brown*, 261 S.W. 959 (Tenn. 1924). It may be that Husband has an additional "place of abode" in

Florida at Wife's house, but it is clear that he has intended his domicile to be in Bledsoe County. We affirm the trial court's ruling that it had jurisdiction in this case.

## *V. Recusal*

As noted above, after the court's ruling adverse to Wife on the jurisdiction issue, she filed a motion for the trial judge to recuse himself. The grounds for the motion were: (1) in June of 1990, the judge had done some title insurance work as an attorney for the sellers of the Bledsoe County farm purchased by Husband; (2) in April of 1992, Wife apparently made inquiry regarding renting office space in a building owned by the judge's father, and Wife paid rent on the office space to the trial judge for a number of months in 1992.

Judge Upchurch declined to recuse himself, stating:

> I don't have any independent recollection about any matters involving your client [Wife] or Mr. Conley other than what I've stated. . .And it's extremely problematic for part–time Sessions judges to practice law and to hear cases, but when there are true conflicts and when there is an appearance of a conflict and appearance of an impropriety, I will recuse myself, but I don't find that to be the case here. And with all due respect, I'm going to deny the motion.

Regarding a motion to recuse, "whether recusal is warranted is left to the discretion of the trial judge, and such decision will not be reversed absent a clear abuse of discretion on the face of the record." *Board of Professional Resp. v. Slavin,* 145 S.W.3d 538, 546 (Tenn. 2004). The Supreme Court further stated in *Slavin* as follows:

> Parties may lose the right to question a judge's impartiality if they attempt to manipulate the impartiality issue to gain procedural advantage. *Davis v. Tenn. Dep't of Employment Sec.,* 23 S.W.3d 304, 313 (Tenn.Ct.App.1999). [T]he failure to seek recusal in a timely manner results in a waiver of a party's right to question a judge's impartiality. *Id.* [Internal quotations omitted].

*Slavin,* 145 S.W.3d at p.547. Wife waited over fifteen months from the filing of the divorce complaint to raise the recusal issue, and did so only after the ruling in Husband's favor on her motion to dismiss. There is ample evidence to support a finding that the recusal issue was waived for failure to timely raise it. Nevertheless, we have considered the merits of the issue, and hold that the evidence does not show an abuse of the court's discretion. Wife presented no evidence that would objectively warrant the trial judge to recuse himself from this case.

## *IV. Division of Marital Estate*

We next consider whether the trial court erred in classifying certain assets as marital rather than Husband's separate property, as Husband contends, and whether the court equitably divided the marital property between the parties.

Tenn. Code Ann. § 36-4-121(c) provides that the court shall consider "all relevant factors" including the following factors in making an equitable distribution of marital property:

> (1)  The duration of the marriage;
> (2)  The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3)  The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4)  The relative ability of each party for future acquisitions of capital assets and income;
> (5)  The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6)  The value of the separate property of each party;
> (7)  The estate of each party at the time of the marriage;
> (8)  The economic circumstances of each party at the time the division of property is to become effective.
> (9)  The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
> (10)  The amount of social security benefits available to each spouse; and
> (11)  Such other factors as are necessary to consider the equities between the parties.

A trial court is allowed wide latitude in determining an equitable division of marital property and we will defer to the trial court's determination unless it is inconsistent with the factors set forth above or there is a preponderance of evidence to the contrary. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449-50 (Tenn. Ct. App. 1991).

The division of the marital estate begins with the classification of the parties' property as either "marital" or "separate." *McClellan v. McClellan*, 873 S.W.2d 350, 351 (Tenn. Ct. App. 1993). Tenn. Code Ann. § 36-4-121 sets forth the definition of marital property. "Generally speaking property that is acquired during a marriage by either or both spouses and still owned by either or both

spouses when the divorce is granted is classified as marital property and is thus subject to equitable division." *Humphries v. Humphries*, No. E2000-02912-COA-R3-CV, 2001 WL 825986 at *3, 2001 Tenn. App. LEXIS 512 at*9 (Tenn. Ct. App. E.S., filed July 23, 2001).

Husband argues that the Bledsoe County farm, valued at $675,000 by the trial court, should have been classified as his separate property. This real estate, however, was acquired by Husband during the marriage, and the improvements were built on it during the marriage as well. Further, Husband executed a conveyance of title to the property in 1991 so that it was titled jointly in both parties' names. Husband argues that this "was done upon the consideration that the Wife would relocate to Bledsoe County and live with the Husband there," which never happened.

Husband makes a similar argument with respect to two tracts of real estate in Florida, the title to each of which Husband transferred, during the marriage, from himself to the parties jointly. When a spouse treats separate property in such a way as to give evidence of an intention that it become marital property, this action creates a rebuttable presumption of a gift to the marital estate. *Langschmidt v. Langschmidt,* 81 S.W.3d 741, 747 (Tenn. 2002).

The trial court held that Husband did not rebut the presumption created by his action of jointly titling the property at issue, thereby evidencing his intention that it become marital property. The evidence does not preponderate against the trial court's classification of the disputed assets as marital. The trial court did award the tracts of Florida real property to Husband, and Husband states in his brief, "[h]ad the court properly defined the separate assets of the Husband, the court would have been justified in dividing the estate in roughly the same manner that it did under the court's marital property analysis. However, even under the marital property analysis, the court was justified in its division." We find no error in the trial court's decision classifying the property at issue as marital property.

As already noted, the trial court divided the marital estate so that Husband received assets valued at $1,877,644.48 (70.59% of the estate) and Wife received assets valued at $782,237.75 (29.41%). A review of the relevant statutory factors establishes the following. The parties had been married nearly fifteen years at the time of the complaint for divorce. Husband, however, argues in his brief that "[t]his marriage has essentially been over for more than 10 years, with the Husband having resided in Bledsoe County since 1990, while the Wife continued to reside in Merritt Island, Florida."

Husband was 82 years old at the time of the hearing. Wife was 54 years old at the time of the hearing. The trial court found both parties to be in relatively good physical health. Husband retired from his orthodontic practice in December of 1987, shortly after the marriage. Wife has a Master's Degree, is fluent in three languages, and worked full-time as a stockbroker throughout the course of the marriage. The trial court made the following findings of fact in its memorandum opinion, none of which have been challenged by either party on appeal:

> [Wife's] earnings as a stockbroker exceeded [Husband's]
> orthodontic income, and, after the sale of his dental practice,

-10-

[Husband's] Social Security benefits, [his] interest and dividend income and his farm income. Her annual average earnings, during the marriage, were $51,518.00. [Wife's] brokerage income in 2001 and 2002 (the years this divorce action was pending) was $27,856.00 and $32,849.00, respectively. [Husband's] monthly Social Security income is $1,254.00; his average monthly interest and dividend income is $600.00; and he receives some income from the sale of hay (eclipsed, however, by farm expenses).

That at the time of the marriage, the [Husband] had accumulated assets with an approximate equitable value of One Million Three Hundred Thousand ($1,300,000.00) Dollars. . .

*      *      *

That at the time of the marriage, the [Wife] had accumulated assets with an approximate equitable value of One Hundred Thousand ($100,000.00) Dollars. . .

*      *      *

That the [Husband] is not able to resume any type of meaningful gainful employment, given his age, education, and past relevant work history. His income, in the future, will be limited to Social Security benefits, interest and dividends, and, at best, a "break-even" position from the sale of hay in conjunction with the operation of his farm...

That the [Wife] can earn an annual income in excess of her average marital earnings, and possesses an earnings potential far in excess of that of [Husband]. The Court specifically finds that [Wife] possesses the credentials, intelligence, work ethic and personality necessary to advance her career as a stockbroker or as an educator or in the education/administration fields. [Numbering in original omitted].

Under the facts of the present case, while it is clear that "[t]he division of the estate is not rendered inequitable simply because it is not mathematically equal," *King v. King,* 986 S.W.2d 216, 219 (Tenn. Ct. App.1998), we are of the opinion that a division somewhat closer to equality more appropriately and equitably takes into consideration Wife's significant contributions to the marriage, including the fact that she was the sole wage-earner for nearly the entire marriage.

The trial court found the total value of the Bledsoe County farm and equipment thereon to be $708,000. The court awarded Husband a life estate in the property, and ruled that upon Husband's death, or upon sale of the property, Wife was entitled to 25% of the sale proceeds. We modify the court's judgment to award the entire value of the Bledsoe County farm and equipment to Husband.

-11-

The parties owned an investment account held with Edward Jones that the court valued at $465,347 at the time of the hearing. The court awarded 75% of the value of the account to Husband, or $349,010.25. We modify the trial court's judgment to award the entire value of this account, number 90808, to the Wife.[1]

The preceding modifications result in a total award of assets valued at $1,705,634.23 to Husband, or 64% of the marital estate, and an award of assets valued at $954,248 to Wife, or 36% of the marital estate. We believe that this division of the marital estate is a more equitable one. This division further provides to both parties the benefit of having all assets divided in a "clean break," and thereby avoids the potential problems associated with Husband and Wife each owning a proportion of an asset, particularly the real property in Bledsoe County. Given the discordant history of the parties, such a division seems likely to benefit both of them, and may avoid further litigation in the future.

For the aforementioned reasons, the judgment of the trial court is affirmed as modified, and the case remanded. Costs on appeal are assessed one-half to the Appellant, Jo Ann Conley, and one-half to the Appellee, Lendel L. Conley.

_____

SHARON G. LEE, JUDGE

---

[1] Husband has filed a motion with this court "for consideration of post judgment facts," alleging that subsequent to the appeal of this case, he learned that a substantial amount of this account "had been withdrawn, transferred or dissipated by the Wife." Our disposition of this asset on appeal renders the issues raised in Husband's motion moot.