IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted On Brief March 17, 2005

## LARRY N. MENDELSON v. BERT H. BORNBLUM, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-03-1810-3    D.J. Alissandratos, Chancellor**

---

**No. W2004-02549-COA-R3-CV - Filed July 8, 2005**

---

This case involves a dispute over the subdivision of a lot within a residential neighborhood restricted by protective covenants. The plaintiff purchased a lot within a neighborhood in Memphis. Although not required under the then-existing protective covenants, he obtained majority consent of the other neighborhood lot owners to subdivide his lot into two separate lots. The Land Use Control Board denied the side-by-side configuration as well as a previously recommended flag-lot configuration. The plaintiff appealed to the Memphis City Council, and the council overturned the Land Use Control Board's rejection of the plaintiff's application. Before the council's decision was formally issued, however, the lot owners amended the neighborhood's restrictive covenants so that the plaintiff's proposed re-subdivision, as well as any further subdivision of lots within the neighborhood, would be prohibited. The plaintiff filed an action for declaratory judgment. At the hearing on cross-motions for summary judgment, the parties agreed to submit the case on stipulated evidence, and the trial court denied the plaintiff's request for declaratory relief. The plaintiff appeals. We reverse.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Joseph T. Getz and Charles A. Ray, IV, Memphis, Tennessee, for the appellant, Larry N. Mendelson.

Allan J. Wade, Lori Hackleman Patterson and Brandy S. Parrish, Memphis, Tennessee, for the appellees, Bert H. Bornblum, Joshua G. Brown, III, Trudy R. Brown, Lucile B. Buchignai, Adriana Cervetti, Lawrence R. Cervetti, Donna Clark, Isabel Coulter, Ronald Coulter, Stephen R. Davis, Charles W. Dean, Eleanor G. Dean, George Dupont, II, Rosalie W. Epstein, Anthony J. Evangilisti, Charles Fisher, III, Nancy H. Fisher, Stephen J. Ford, Kathy R. Ford, Bettie W. Golwen, Howard L. Golwen, Cynthia R. Gratz, John F. Gratz, Jr., Charles R. Hardee, Gayle W. Hardee, Luanne Harris, Helen Hoffman, Jan Jasper, Jeffrey Jasper, Frank P. Lamanna, Kelly F. Lamanna, Carol I. Lynn, William R. Lynn, Flinn Maxwell, Gwen Maxwell, Robert McBurney, Vivian McBurney, Linda

Montgomery, June M. Parker, Lloyd V. Parker, Daniel D. Pendergrass, Christopher S. Pettit, Suzanne Pettit, Rebecca B. Phillips, Anna S. Prest, Robert R. Prest, Jr., Basil Ratiu, Delores Ratiu, Leroy Sanes, Sonja Sanes, Michael S. Seligman, Mona Seligman, The Raymond D. Lovvorn Revocable Trust and Frances Tate.

## OPINION

### Factual Background and Procedural History

This matter involves a dispute between Plaintiff/Appellant Larry N. Mendelson ("Plaintiff") and several lot owners within Norfleet Estates Subdivision ("Defendants"), who opposed Plaintiff's proposed re-subdivision of a single residential lot within their neighborhood. At the hearing on the parties' cross-motions for summary judgment, the parties agreed to convert this matter into a trial on the merits based upon stipulated facts. Therefore, we will state the facts of this case as presented in the technical record and as submitted by the parties in support of their respective summary judgment motions.

In 1952, R. Vance Norfleet ("Mr. Norfleet") subdivided a tract of property within the City of Memphis, which he named Norfleet Estates Subdivision ("Norfleet Estates," or the "neighborhood"). Mr. Norfleet initially subdivided the neighborhood into thirty-two (32) lots.[1] The original protective covenants for Norfleet Estates (the "Protective Covenants") did not prohibit the further re-subdivision of lots within the neighborhood. The Protective Covenants provided, however, that amendments may be made to the covenants upon the majority approval of the neighborhood's lot owners.

On two separate occasions in 1954, different property owners re-subdivided lots within Norfleet Estates. On one occasion, a neighborhood property owner recorded a subdivision plat that moved the boundary lines that existed between Lots twenty-six (26) and twenty-seven (27) (the "Hunter Re-subdivision"). Shortly thereafter, Mr. Norfleet subdivided Lots twenty-nine (29) though thirty-three (33) by reducing the size of each lot to allow for the addition of a new parcel, Lot thirty-four (34) (the "Marshall Re-subdivision"). Additionally, in 1998, a majority of the lot owners recorded an amendment to the Protective Covenants that reduced the minimum front-yard setback line for Lot eight (8).

On or about August 30, 2002, Plaintiff purchased Lot five (5) ("Lot 5"). Simultaneously, he began plans to re-subdivide Lot 5 into two single-family residential lots. With the exception of one lot owner, Plaintiff met with each lot owner or a representative of each lot owner within Norfleet Estates and discussed his re-subdivision plans. In those discussions, Plaintiff made the following representations: (1) that he intended to re-subdivide Lot 5 into two lots approximately equal in size;

---

[1] The Norfleet Estates plat contained lots numbered 1–33. Lot number three (3) was omitted in the plat, leaving 32 lots.

(2) that he intended to build a 4,500 square foot home on each lot; (3) that he intended for each lot to be substantially parallel so that the homes built thereon would sit side-by-side; and (4) that he would not subdivide Lot 5 without the majority consent of the lot owners within Norfleet Estates. Prior to meeting with the lot owners and purchasing Lot 5, Plaintiff also delivered to "a few" of the lot owners a document entitled "Memorandum of Intent," wherein he set forth his plans regarding the re-subdivision of Lot 5. Within this Memorandum of Intent, Plaintiff stated that the purpose of the letter was to inform the neighbors of his plan for Lot 5 and to answer any of their questions. In the memorandum, Plaintiff stated that "[e]ach respective lot would have 22,297 square feet." However, Plaintiff did not specifically state in the memorandum that the lots would be parallel with the houses being situated in a side-by-side configuration, although he did include a diagram indicating a side-by-side, or "split-lot," configuration. Rather, Plaintiff stated in the memorandum that "[he] intend[ed] to build single family dwellings that will reflect and retain the quality and character of the neighborhood."

Plaintiff obtained the consent of at least seventeen (17) of the Norfleet Estates lot owners, and on September 5, 2002, he recorded an amendment to the Protective Covenants showing the re-subdivision of Lot 5 (the "Lot 5 Amendment"). In that instrument, a majority of the lot owners consented to amend the Protective Covenants to provide that, "[t]he Protective Covenants are hereby amended to allow the resubdivision of Lot 5 into two residential lots, and there may be erected on each new lot one single family residential dwelling."

After filing the Lot 5 Amendment, Plaintiff retained the services of SR Consulting, LLC ("SRC"), a subdivision design, engineering, and consulting firm, to assist him with obtaining government approval for the re-subdivision of Lot 5. On Plaintiff's behalf, SRC submitted an application for the approval of the proposed re-subdivision with the Shelby County Office of Planning and Development (the "OPD"). In a November 14, 2002 meeting with the Memphis and Shelby County Land Use Control Board (the "Board"), the Board recommended a "flag-lot" configuration rather than the proposed split-lot configuration. However, on December 12, 2002, the Board rejected Plaintiff's application under either configuration. On April 15, 2003, Plaintiff appealed the Board's decision to the Memphis City Council (the "Council").

On appeal to the Council, Plaintiff revised the re-subdivision plan, which was originally submitted to the OPD and the Board, to reflect a flag-lot configuration. Under the flag-lot configuration, Lot 5 would be re-subdivided into two unequal parcels, with a front lot containing 19,667 square feet and a rear lot consisting of 24,954 square feet. Upon presentation of the revised plan to the Council, SRC represented that a majority of the lot owners within Norfleet Estates had approved the plan, without mentioning whether the approval was limited to a split-lot or flag-lot design. Although Plaintiff's original split-lot configuration had been denied by the Board, Plaintiff did not seek to obtain the lot owners' majority consent to the revised flag-lot configuration before or after submitting the matter to the Council. Rather, Plaintiff contends that the lot owners who approved the Lot 5 Amendment gave their consent without limitation to the specific lot configuration used. At least one lot owner who consented to the original subdivision plan appeared at the April 15, 2003 Council hearing in opposition to Plaintiff's revised flag-lot plan. After hearing from the

respective parties, the Council overturned the Board's rejection and approved the re-subdivision of Lot 5 with the flag-lot configuration.

On May 6, 2003, a majority of the lot owners within Norfleet Estates recorded an instrument entitled "Amended and Restated Protective Covenants of Norfleet Estates Subdivision" (the "May 6, 2003 Amendments"). In that document, the lot owners expressly voted to amend the Protective Covenants to provide that lots in Norfleet Estates "are not to be resubdivided." In addition, the May 6, 2003 Amendments specifically provided with respect to Plaintiff's re-subdivision of Lot 5 that, "[a]ny and all prior amendments to the Protective Covenants that are inconsistent with these Amended and Restated Protective Covenants, specifically including the amendments to resubdivide Lot 5, are hereby replaced, rescinded, and declared of no force and effect."

On that same day, May 6, 2003, the Council met to approve the Minutes of the April 15, 2003 meeting. At this meeting, the Council was informed of the lot owners' opposition and the freshly recorded amended covenants. The Council approved the minutes but deferred to the courts for a determination of the legality of the Lot 5 re-subdivision. On June 10, 2003, the Council approved Plaintiff's final re-subdivision plan, utilizing the flag-lot configuration.

On September 19, 2003, Plaintiff filed his Complaint and Request for Declaratory Judgment and Damages against Defendants, seeking the trial court's declaration regarding his rights to re-subdivide Lot 5 and regarding the validity of the May 6, 2003 Amendments. The parties later filed cross-motions for summary judgment. At the summary judgment hearing, the parties agreed to stipulate to the facts as presented in their respective motions and convert the summary judgment matter into a trial on the merits. Based upon the stipulated evidence, the Chancellor entered judgment in favor of Defendants, making findings of fact and the following conclusions of law:

1. Prior to May 6, 2003, the Protective Covenants did not prevent Plaintiff from resubdividing Lot 5. . . .

2. Having sought and obtained lot owner consents to resubdivide Lot 5 ("Lot Owner's [sic] Consents"), Plaintiff is estopped to assert such approval was irrelevant or unnecessary.

3. Plaintiff has failed to carry the burden of proof that Plaintiff's representations to some of the Defendants who consented to his plan were immaterial as to be disregarded by the Court.

4. Plaintiff's [r]epresentations to Defendants became a part of the Lot Owner's [sic] Consents and Plaintiff was estopped to substantially deviate from those representations without approval of said lot owners to such deviation.

5. Plaintiff also understood and agreed that the September 5, 2002 Amendment to the [Protective Covenants] allowed for subsequent amendments upon

-4-

written approval from a majority of the lot owners with[in] Norfleet Estates Subdivision. The approval and filing of the May 6, 2003 Amendment to the Protective Covenants, at Plaintiff's invitation, by a majority of the lot owners before final approval of the subdivision prevents Plaintiff's resubdivision of Lot 5 without the consent of all other lot owners in the subdivision.

From this order, Plaintiff appeals and presents, as we perceive them, the following issues for our review:

(1) Whether the trial court erred in concluding that Plaintiff was estopped from asserting that initial majority approval of his plan to re-subdivide Lot 5 was either irrelevant or unnecessary;

(2) Whether the trial court erred in concluding that Plaintiff's representations to some of the Defendants became part of their consent to his re-subdivision and that Plaintiff was, therefore, estopped to substantially deviate from those representations without approval of those lot owners; and

(3) Whether the trial court erred in concluding that the approval and filing of the May 6, 2003 Amendments prevented the re-subdivision of Lot 5 without the consent of all other lot owners in the subdivision.

## Standard of Review

The parties appeared in the court below for a summary judgment hearing. However, they agreed to submit the case to a trial on the merits based on stipulated facts. Therefore, our review is *de novo* on the record. Tenn. R. App. P. 13(d) (2004); *see also Conley v. Conley,* No. E2004-01309-COA-R3-CV, 2005 WL 1111203, at *5 (Tenn. Ct. App. May 9, 2005) (citing *Cho v. Jeong*, No. 03A01-9806-CV-00257, 1997 WL 306017, at *4 (Tenn. Ct. App. June 6, 1997)). The trial court's findings of fact are accompanied by a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). However, the trial court's conclusions of law carry no such presumption. *Bowden v. Ward*, 275 S.W.3d 913, 916 (Tenn. 2000).

## Law and Analysis

Plaintiff argues that he was not required to obtain majority consent of Defendants to subdivide Lot 5 because the Protective Covenants did not expressly prohibit the re-subdivision of lots within Norfleet Estates. Nonetheless, Plaintiff contends that he obtained their consent, and that consent was memorialized in the recorded Lot 5 Amendment, without limitation to the type of lot configuration. Relying on Defendants' approval, Plaintiff argues that he incurred substantial costs in furtherance of his plan. After obtaining government approval, Defendants adopted the May 6,

2003 Amendments in an attempt to revoke the Lot 5 Amendment and prohibit further re-subdivision within Norfleet Estates.  Plaintiff insists that the May 6, 2003 Amendments are invalid as applied to him because five of the seventeen lot owners who approved the May 6, 2003 Amendments had previously consented to the re-subdivision of Lot 5.  As he relied on this consent, Plaintiff argues that those five lot owners should be estopped from opposing the re-subdivision of Lot 5.  Further, Plaintiff argues that the May 6, 2003 Amendments would have to be applied retroactively and, therefore, violate settled law in this state.

Defendants agree with Plaintiff that, under the original Protective Covenants, he was free to subdivide Lot 5 without lot owner approval.  However, having sought and obtained lot owner approval, Defendants contend that Plaintiff is estopped to assert that such action was irrelevant or unnecessary.  Further, Defendants insist that they approved the re-subdivision under the split-lot configuration only, and Plaintiff and his representative misrepresented Defendants' approval when they expressed to the Council that "a majority of the neighbors" had consented to the re-subdivision plan.

We begin by turning first to the trial court's conclusion that Plaintiff, because he obtained Defendants' majority approval of the Lot 5 re-subdivision, was estopped to assert that such approval was irrelevant or unnecessary.  Estoppel has been explained to apply "[w]hen a man has been misled by the untruth propounded by another, *and acted to his detriment in reliance upon the misrepresentation*." *Arthur v. Lake Tansi Village, Inc.*, 590 S.W.2d 923, 930 (Tenn. 1979) (quoting *Duke v. Hopper*, 486 S.W.2d 744, 748 (Tenn. Ct. App. 1972)) (emphasis in *Arthur*).  In that situation, "the misleading party will be estopped to show that the true facts are contrary to those he first propounded." *Id.*  Upon review of the record, we do not believe the doctrine of estoppel is applicable to Plaintiff.  First, Defendants insist that Plaintiff misrepresented his intention to re-subdivide Lot 5 using a split-lot configuration.  While it may be true that Plaintiff initially intended to use a split-lot configuration and conveyed that intention to Defendants, he was under no legal compulsion to inform Defendants of his intent.  The parties agree that, under the original Protective Covenants, Plaintiff was not required to obtain lot-owner consent to re-subdivide Lot 5.  Therefore, Defendants cannot complain that they detrimentally relied on Plaintiff's statements because they had no legal authority to prohibit the re-subdivision.

Defendants, however, argue that the consenting lot owners' forbearance from opposing the re-subdivision during the stages of government approval was "sufficient consideration to form a contract by estoppel."  Defendants also intimate that Plaintiff's "Memorandum of Intent" was a binding contract to only re-subdivide Lot 5 using a side-by-side configuration.  We cannot agree with Defendants' assertion that Plaintiff's memorandum was a binding contract.  Rather, upon review of the document, it clearly serves as a simple notice of Plaintiff's intended plan.  With respect to Defendants' argument of "contract by estoppel," we find this argument without merit.  Without implying that Defendants' "forbearance" would rise to the level of legal detriment, we note that the record does not contain a transcript of the proceedings before the OPD, LUCB, or the Council.  Rather, the record reflects that Defendants were represented by legal counsel at those stages, and at least one lot owner was present to voice her opposition at the hearing before the Council.  As the

-6-

fundamental element of detrimental reliance is missing in this case, we conclude that the evidence preponderates against the trial court's finding that Plaintiff was "estopped to assert such approval was irrelevant or unnecessary."

Next, Plaintiff takes issue with the trial court's conclusion that Plaintiff was estopped from substantially deviating from the split-lot configuration without Defendants' further approval. In its findings, the trial court reasoned that Plaintiff's representations became part of the defendant lot owners' consent to the re-subdivision of Lot 5. Therefore, as the trial court determined, Plaintiff was required to obtain majority approval for the flag-lot configuration. As mentioned above, the record does not support the contention that Defendants relied to their legal detriment upon any representations of Plaintiff. Further, the Lot 5 Amendment, signed by a majority of the lot owners within Norfleet Estates, contains no limitation as to a particular lot configuration. Rather, it simply provided that Lot 5 would be re-subdivided into two residential lots, with one single-family residential dwelling being erected on each new lot. Restrictive covenants "will be enforced according to the clearly expressed intention of the parties; but being in derogation of the right of unrestricted use of property, will be strictly construed, and will not be extended by implication to anything not clearly and expressly prohibited by their plain terms." *Turnley v. Garfinkel*, 362 S.W.2d 921, 923 (Tenn. 1962). Under the clear language of the Lot 5 Amendment, Plaintiff was authorized to re-subdivide Lot 5 using the flag-lot configuration without seeking further lot owner approval.

Finally, we turn to the May 6, 2003 Amendments and their purported repeal and rescission of the Lot 5 Amendment. The Tennessee Supreme Court has stated that "no set of covenants should be given any general retroactive effect." *E. Sevier County Util. Dist. v. Wachovia Bank & Trust Co.*, 570 S.W.2d 850, 853 (Tenn. 1978); *see also Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904, 913 (Tenn. 1976); *Graham v. Edmondson*, No. 01A01-9809-CH-00482, 1999 WL 476466, at *4 (Tenn. Ct. App. July 12, 1999). Generally, "the date when title [is] transferred [is] the critical point after which amendments [can] not be enforced against the purchaser." *Conn v. Powell*, 1984 WL 588785, at *3 (Tenn. Ct. App. Nov. 5, 1984). However, where a buyer of land has notice that the property is covered by restrictive covenants and that other lot owners may amend those covenants, the buyer may be bound by amendments made subsequent to the acquisition of title. *Id.* (citing 26 C.J.S. *Deeds* §§ 167(3), 168, 169 (1956)). Notwithstanding that principle, "a provision that any of the restrictions imposed may be modified or amended does not authorize any new or additional restrictions to be imposed, but only authorizes existing restrictions to be made less harsh." *Id.* (quoting 26 C.J.S. *Deeds* § 168 (1956)).

In the present case, Plaintiff purchased Lot 5 and recorded the Lot 5 Amendment, which re-subdivided Lot 5, months prior to the recording of the May 6, 2003 Amendments. In our opinion, the May 6, 2003 Amendments' purported rescission of the Lot 5 re-subdivision would serve as an impermissible retroactive application of a restrictive covenant. Additionally, the May 6, 2003 Amendments operate to tighten the restrictions and may not be applied retroactively in this manner against Plaintiff. Moreover, we find it particularly revealing that Defendants do not argue in their brief that the May 6, 2003 Amendments are controlling in this case, but, rather, they rely exclusively

on their theory of estoppel. Accordingly, we conclude that the trial court erred in concluding that the May 6, 2003 Amendments prevented Plaintiff's re-subdivision of Lot 5.

## Conclusion

For the reasons stated, the judgment of the trial court is reversed. This case is remanded for such further proceedings as are necessary. Costs of this appeal are assessed to the Appellees, Bert H. Bornblum, *et al.*, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE