FILED
04/05/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 8, 2017 Session

## ROGER CHASE HAGANS v. RACHEL WALLOCK HAGANS

**Appeal from the Chancery Court for Franklin County**
**No. CV-20095        Jeffrey F. Stewart, Chancellor**

———————————————————

**No. M2017-00174-COA-R3-CV**

———————————————————

In this divorce action initiated by Father, the chancery court adjudicated the divorce and entered a parenting plan proposed by Father, naming him as primary residential parent and establishing a residential parenting schedule for the parties' child; Mother had previously initiated a custody proceeding in Scotland. Mother moved to dismiss the Tennessee proceeding, contending that the Tennessee court lacked jurisdiction to adjudicate the divorce because the parties we not domiciled in Tennessee and did not have jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act to adjudicate the child custody matters. Upon Mother's appeal, we conclude that the trial court properly exercised jurisdiction over the divorce but, due to the pendency of the proceeding in Scotland, did not have jurisdiction over the custody matters. Accordingly, we affirm the grant of divorce to Father, vacate the parenting plan and child support provisions of the final decree, and remand the case for further proceedings in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

C. Suzanne Landers, Lucie K. Brackin, and Carrie E. Kerley, Memphis, Tennessee, for the appellant, Rachel Wallock Hagans.

Glenna M. Ramer, Chattanooga, Tennessee; Stephen T. Greer, Dunlap, Tennessee; and Donald Capparella, Nashville, Tennessee; for the appellee, Roger Chase Hagans.

## OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY

Roger Hagans ("Father") and Rachel Hagans ("Mother") married in August 2011 in California; Mother gave birth to their son, Christopher, in December 2011. Shortly after Christopher's birth, Father, a member of the Marine Corps, was deployed for six months. During his deployment, Mother lived with her parents in Thousand Oaks, California. After Father returned from his deployment, the couple lived in Simi Valley, California, until January 2013, when they moved to Sewanee, Tennessee, so Father could complete his undergraduate degree at The University of the South, which he completed in 2015. Father was accepted into a masters degree program at the University of St. Andrews in Scotland, and the family left Sewanee in June 2015 and visited family in Oklahoma and California over the summer. Father moved to Scotland in August 2015, and Mother and Christopher joined him in October. Father held a temporary student visa so he could pursue his studies, which was set to expire January 30, 2017; Mother's visa was derivative of Father's.

The parties separated in February 2016 and maintained separate residences in Scotland; on April 14, Mother filed an "Initial Writ" in a court in Scotland, seeking an order permitting her to return to California with Christopher. On April 20, Father filed a complaint for divorce in Chancery Court of Franklin County, Tennessee, on the grounds of irreconcilable differences and inappropriate marital conduct. At the same time, citing his "fear that without Court intervention [Mother] will take the minor child and flee to California," Father filed a motion pursuant to Rule 65.04 of the Tennessee Rules of Civil Procedure seeking a temporary injunction requiring Mother "to return the minor child to the custody of the Plaintiff and to the jurisdiction of this Court and then to prohibit the Defendant from removing the child from the custody of the Plaintiff and from the jurisdiction of this Court." The court granted the injunction the same day and set a hearing for May 9 for Mother to "show cause why this Temporary Injunction shall not continue in effect during the pendency of this cause."[1] Father filed an amended complaint on May 2, and on May 6, Mother filed a motion to dismiss for lack of

---

[1] The order stated in pertinent part:

> 1. Defendant shall return the minor child, Roger Christopher Hagans, to the custody of the Plaintiff immediately upon being given notice of the issuance of this Temporary Injunction.
> 2. The Defendant is hereby prohibited and enjoined from interfering with the Plaintiff's custody of the minor child, Roger Christopher Hagans, once in Plaintiff's custody, until further orders of the Court.
> 3. The Defendant is hereby enjoined and prohibited from removing or attempting to remove the minor child, Roger Christopher Hagans, from the jurisdiction of this Court until further orders of this Court.

jurisdiction and to dissolve the temporary injunction. The motion was accompanied by an affidavit asserting various facts which Mother argued showed that Father was living in Scotland and was not domiciled in Tennessee.

The show cause hearing was held on May 9; in light of the fact that the time for Father to respond to Mother's motion to dismiss for lack of jurisdiction had not expired, the show cause hearing was rescheduled to July 8, to be held immediately after the hearing on Mother's motion. At the conclusion of the hearing on July 8, the court took the matter under advisement and rendered its decision in a telephone conference on July 26; the ruling was memorialized in an order entered August 11. Pertinent to the issues in this appeal, in its ruling the court: denied Mother's motion to dismiss for lack of jurisdiction; held that Tennessee "has home state status" under the UCCJEA (the Uniform Child Custody Jurisdiction Enforcement Act); and stayed proceedings pending a telephone conference pursuant to Tennessee Code Annotated section 36-6-213 between the court and the "appropriate judicial official in Scotland."

Mother's motion for permission to appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure was denied, and on October 11, Father moved for a default judgment; the motion was granted by order entered November 4, and a hearing was set for December 12. Following the hearing, at which neither Mother nor her counsel appeared and at which Father and Christopher's nanny, Rachel Hawkins, testified, the court entered a decree of divorce and permanent parenting plan, which Mother appealed. By order entered March 28, 2017, this Court determined that the decree was not a final judgment because it did not address child support or Father's claim for attorney's fees. Father thereafter moved the trial court to amend the final decree to dispose of those matters, and on April 7, the trial court entered an Order setting child support to be paid by Mother at $1,192.00 per month, attaching the child support worksheet as an exhibit to the final decree, and dismissing father's claim for attorney's fees. This appeal ensued.

On July 10, 2017, this Court entered an order granting Father's motion to consider as a post-judgment fact the May 30, 2017 order of the court in Scotland, ruling that it would stay the action pending before it "on the grounds that there are proceedings with respect to the matters to which the application relates continuing outside Scotland, in Tennessee, and that it would be more appropriate for those matters to be determined in proceedings outside Scotland." In the same order, we granted Mother's motion to consider the fact that she was appealing the May 30 decision. A few days prior to oral argument, the parties advised this Court that the appellate court in Scotland had overturned the trial court's decision.

Mother raises the following issues for our review:

I.   Did the trial court err in failing to comply with Tennessee Code Annotated § 36-6-221 because a child custody proceeding had already been commenced in

3

Scotland when Father filed his "Complaint for Divorce" seeking legal and physical custody of the minor child in the Chancery Court of Franklin County, Tennessee?

II.   Did the trial court err in finding Tennessee was the home state of the minor child in contravention of the law in this state as set out in the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA"), as codified at Tennessee Code Annotated §36-6-201, *et seq*.?

III.  Did the trial court err in holding that Tennessee was the domicile for both Mother and Father at the time Father filed his "Complaint for Divorce" in the Chancery Court of Franklin County, Tennessee?

IV.   Alternatively, if the trial court did have jurisdiction to issue a child custody order, did the trial court abuse its discretion in limiting Mother's parenting time to supervised visitation in the "Permanent Parenting Plan Order?"

V.    Alternatively, if the trial court did have jurisdiction to issue a child custody order, did the trial court err in its calculation of child support by attributing $0 in gross income to Father?

## II.   STANDARD OF REVIEW

"In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates against those findings." *Conley v. Conley*, 181 S.W.3d 692, 695 (Tenn. Ct. App. 2005) (citing Tenn. R. App. P. 13(d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). We accord the trial court's conclusions of law no such presumption. *Conley*, 181 S.W.3d at 695 (citing *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn. 1993)).

## III.  ANALYSIS

We begin by examining whether the trial court properly exercised jurisdiction over the divorce action, including matters related to Christopher, when a custody proceeding had been previously initiated in Scotland by Mother. In this regard, we must first resolve the question of whether one or both parties was a resident or domiciliary of Tennessee in order for the court to have jurisdiction to adjudicate the divorce action; if so, we must also determine whether the UCCJEA dictates that the chancery court should have declined to accept jurisdiction over the custody proceedings due to the existence of the proceedings in Scotland.

### A. Domicile

The court's jurisdiction to adjudicate the divorce is governed by Tennessee Code Annotated section 36-4-104(a), which reads:

> A divorce may be granted for any of the aforementioned causes if the acts complained of were committed while the plaintiff was a bona fide resident of this state or if the acts complained of were committed out of this state and the plaintiff resided out of the state at the time, if the plaintiff or the defendant has resided in this state six (6) months next preceding the filing of the complaint.

"Our courts have interpreted the term 'residence' as used in Tenn. Code Ann. § 36-4-104(a) to be synonymous with 'domicile.'" *Conley*, 181 S.W.3d at 696 (citing *Brown v. Brown,* 261 S.W. 959 (Tenn. 1924); *Wiseman v. Wiseman*, 393 S.W.2d 892, 895 (Tenn. 1965); *Barnett v. Barnett,* No. 01A01-9605-CH-00228, 1998 WL 787043 at *3, 1998 Tenn. App. LEXIS 765 at *8 (Tenn. Ct. App., Nov. 13, 1998)). Accordingly, at least one of the parties must be domiciled in the state in order for the court to have jurisdiction over an action for divorce. Tenn. Code Ann. § 36-4-104(a); *Williams v. North Carolina*, 325 U.S. 226 (1945); *Conley v. Conley*, 181 S.W.3d 692, 695–96 (Tenn. Ct. App. 2005); *Tyborowski v. Tyborowski*, 192 S.W.2d 231, 232 (Tenn. Ct. App. 1945); *Wiseman v. Wiseman*, 393 S.W.2d 892, 894 (Tenn. 1965). The Tennessee Supreme Court has stated:

> "[D]omicile" import[s] a legal relation existing between a person and a particular place based on actual residence, plus a concurrent intention there to remain, as at a fixed abiding place.
>
> A man may have two or more residences, but only one domicile or legal residence. He must have a domicile somewhere; he can have only one; therefore, "in order to lose one, he must acquire another."

*Denny v. Sumner Cty.*, 184 S.W. 14, 16 (Tenn. 1916).

Of particular import to our inquiry are cases which discuss determining domicile for purposes of divorce jurisdiction where, as here, the parties have moved several times in the course of their marriage. "[A] mere transient or temporary absence from the state, with a fixed purpose of returning, does not work a change of domicile." *Sparks v. Sparks*, 88 S.W. 173, 175 (Tenn. 1905). "To constitute a change from a domicile to another domicile of choice . . . three things are essential: (a) Actual residence in the other or new place; (b) an intention to abandon the old domicile; and (c) an intention of acquiring a new one at the other place." *Denny,* 184 S.W. at 16 (citing *Sparks*, 88 S.W. at 174; *Foster v. Hall*, 23 Tenn. 346, 348 (Tenn. 1843)). With regard to the last element, the Tennessee Supreme Court has explained:

5

> If the absence from the domicile of nativity or an acquired domicile is temporary, and there is all the while a fixed and definite intention of returning, there is no change, and no new domicile is obtained. Residence, however long, will not work a change of domicile, unless accompanied with such intent. The intention, however, to return to the domicile of nativity, or one acquired, must be fixed, absolute, and unconditional. A mere floating intention to return at some future period or upon the happening of some uncertain event is not sufficient. The intent to return must not depend upon inclination or be controlled by future events.

*Sparks*, 88 S.W. at 174 (internal citations omitted). "In determining whether or not a change of domicile has been made, it is proper to consider the conduct and declarations of the party whose domicile is in question, and all other facts that throw light on the subject." *Wiseman v. Wiseman*, 393 S.W.2d 892, 895 (Tenn. 1965) (citing *Sparks*, 88 S.W. at 174).

The amended complaint alleged: "Plaintiff and Defendant are both domiciled in the State of Tennessee. The parties resided in Sewanee, Tennessee, from January 2013 to May 2015. . . . [T]he purposes occasioning the parties' absence from the State of Tennessee are transitory in nature and both parties remain domiciled in the State of Tennessee." In her motion to dismiss the case, which was supported by her three affidavits, Mother attempted to establish that the parties were not domiciled in Tennessee. Father filed an affidavit in response to her motion to dismiss. A hearing on the motion to dismiss was held; the court took the matter under advisement and in due course rendered an oral ruling making findings of fact and conclusions of law, later incorporated into an order. Pertinent to the issue before us, the court held:

> In this case Mr. Hagans and Ms. Hagans lived longer in Tennessee than any place in their short marriage. About 18 months in California, if you include the August time frames in 2015 when Ms. Hagans stayed on after Mr. Hagans went to Scotland. Thirty months in Tennessee. Approximately three months traveling in 2015, and eight months they were together in Scotland with legal proceedings in Scotland and Tennessee the last month.

> In Tennessee the parties settled into their rented residence. They hired a nanny for their son. They established friendships and medical service for themselves and their son, used banking services, referred to Tennessee as their residence on some of their documents and licenses. They knew when Mr. Hagans finished school at Sewanee they would go to Scotland for him to pursue an advanced degree. He would pursue other opportunities including a return to Sewanee. From the facts in the affidavits and sworn complaint of Mr. Hagans, it appears Mr. Hagans coupled an

6

intention for Tennessee to be his domicile with the acts of living in Tennessee. His return to Sewanee is indicative of his intent to end his wayfaring days and return to his home, Sewanee, Tennessee. His absence was temporary.

Therefore, he has fulfilled his duty to establish his domicile in Tennessee and as a resident under TCA 36-4-104. I therefore overrule the motion to dismiss the complaint for lack of jurisdiction. He's met the requirements.

In our resolution of this issue we note, as did the court in *Conley v. Conley*, that Mother's motion to dismiss was effectively a motion for summary judgment wherein the court elected to hold a hearing and consider the affidavits introduced by the parties; consequently, our review is *de novo* on the record in accordance with Tennessee Rule of Appellate Procedure 13(d). *Conley*, 181 S.W.3d 692, 698 (Tenn. Ct. App. 2005).

The evidence does not preponderate against the court's ruling that Father was domiciled in Tennessee. Mother does not argue that the evidence preponderates against the factual findings made by the court quoted above with respect to the domicile they had established in Sewanee, and the record is uncontradicted that the only reason the parties relocated to Scotland was for Father to participate in the masters program at the university. Moreover, there is no evidence—and Mother does not argue—that either of them intended to establish a new domicile in Scotland or any place other than Sewanee; indeed, as held by the trial court, Father's affidavit shows a lack of intent on his part to abandon his Tennessee domicile. In the absence of such intent, neither could have acquired a new domicile there. *See Denny,* 184 S.W. at 16. Accordingly, we find no error in the court's conclusion that it had jurisdiction over the divorce action. *Conley*, 181 S.W.3d at 698.

## B. Child Custody Proceedings

The trial court's exercise of jurisdiction relative to the child custody matters is governed by the UCCJEA, which is to be "liberally construed and applied to promote its underlying purposes and policies," which include "avoid[ing] jurisdictional competition and conflict with courts of other states in matters of child custody…"; "discourag[ing] the use of the interstate system for continuing controversies over child custody"; and avoid[ing] relitigation of custody decisions of other states in this state." Tenn. Code Ann. § 36-6-202. Tennessee courts "shall treat a foreign country as if it were a state of the United States for the purpose of applying [the UCCJEA]." Tenn. Code Ann. § 36-6-208(a). "Jurisdiction under the UCCJEA attaches at the commencement of a proceeding[,] . . . [and] the UCCJEA defines the term 'commencement' as 'the filing of the first pleading in a proceeding.'" *Taylor v. McClintock*, No. M2013-02293-COA-R3-CV, 2014 WL 3734894, at *6 (Tenn. Ct. App. July 25, 2014) (citing Tenn. Code Ann. §

36-6-217 cmt; Tenn. Code Ann. § 36-6-205(5); *Staats v. McKinnon,* 206 S.W.3d 532, 548–49 (Tenn. Ct. App. 2006). The issue of whether a court has subject matter jurisdiction under the UCCJEA is a question of law, which we review *de novo,* with no presumption of the correctness of the trial court's decision. *Taylor*, 2014 WL 3734894, at *5 (citing *Button v. Waite,* 208 S.W.3d 366, 369 (Tenn. 2006)). The chronology of events leads us to conclude that, on the record before us, the trial court did not have jurisdiction over the child custody matters.

In the Scotland proceeding, which was initiated prior to the divorce action in Tennessee, Mother sought a "Residence Order" and "Interim Residence Order," and argued that "a Shared Care Arrangement is contrary to the best interests of the child." Mother also sought a "Specific Issue Order" authorizing her to relocate to California in May 2016, or to remove the child to California for one month commencing May 18, 2016. Father responded, seeking the following in the Scotland proceeding: a "Residence Order" for Christopher to reside with him, a "Specific Issue Order" authorizing him to relocate with the child to Tennessee, and an order (known as an "interdict") preventing Mother from removing the child from the jurisdiction of the court, with the exception of the "one month holiday period," to which he had agreed. On May 19, 2016, the presiding official in the Scotland proceeding, entitled the "Sheriff," entered an order preventing ("interdicting") Father from removing Christopher "from the care and control of [Mother]" or from "removing or attempting to remove [Christopher] from the jurisdiction of this Court or from the United Kingdom."

In the Tennessee proceeding, the trial court entered the Final Decree of Divorce on December 12, 2016, and Mother initiated the present appeal; the court in Scotland stayed ("sisted") its proceedings on May 30, 2017, holding that "the child's best interests are served by proceedings continuing in Tennessee" and that "[t]he Tennessee Court has a real and substantial connection with the dispute between the parties and is the most appropriate forum." That decision was appealed, and on October 30, 2017, the appellate court in Scotland overturned the trial court's decision. As a result, there is a custody determination in Tennessee that conflicts with the order of the Scotland court.

Tennessee Code Annotated section 36-6-221(a) provides:

Except as otherwise provided in § 36-6-219[2], a court of this state may not exercise its jurisdiction under this part if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this part, unless the proceeding has been

---

[2] Section 36-6-219 grants jurisdiction to courts of the state when a child is present in the state or is placed in an emergency situation. Father acknowledges in his brief that the statute is not applicable to this case.

terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under § 36-6-222.

Father conceded in his "Defences" filed in response to Mother's Initial Writ that the court in Scotland had jurisdiction over the child custody matter; he referenced this proceeding in the complaint and amended complaint he filed in the Franklin County, Tennessee, chancery court as well. At no time prior to the issuance of the Chancellor's final decree did the Sherriff Court stay the proceedings in Scotland, thus two custody proceedings were being litigated at the same time, contrary to the purpose and construction of the UCCJEA, as stated at Tennessee Code Annotated section 36-6-202. Application of the UCCJEA leads us to conclude that the Tennessee court did not have jurisdiction over the child custody proceedings initiated by Father, as a proceeding concerning the custody of the child "ha[d] been commenced" in the courts of Scotland. Tenn. Code Ann. § 36-6-221(a). Until such time as the court in Scotland cedes jurisdiction, it has exclusive jurisdiction of the custody matters between these parties; accordingly, we vacate the Parenting Plan and child support obligations incorporated into the final decree.

Our resolution of these issues pretermits our consideration of the remaining issues raised by Mother.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the grant of divorce and vacate the Parenting Plan and child support obligations in the final decree. We remand the case for such further proceedings as may be necessary consistent with this opinion.

_____
RICHARD H. DINKINS, JUDGE

9