Rozelle TATE, et al., Plaintiffs,

v.

David COLLINS, et al., Defendants

No. 80–2381–M.

United States District Court,
W.D. Tennessee, W.D.

Nov. 26, 1985.

Susan L. Kay, Nashville, Tenn., for plaintiffs.

Michael W. Catalano, Asst. Atty. Gen., William F. Howard, Acting Director of Law, Nashville, Tenn., for defendants.

### MEMORANDUM DECISION

McRAE, Chief Judge.

Intervenors Ronald Newson and three other inmates at the Tennessee State Penitentiary in Nashville, have petitioned this Court for clarification of its Final Consent Order entered September 17, 1980, in this case on the issue of a proper determination of prisoners' voting domiciles. Specifically, intervenors submit that they are entitled to the opportunity to rebut a presumption that they are domiciled in the county of their residence immediately prior to incarceration and thereby to establish new domicile at the penitentiary in Davidson County.

Newson, et al., were granted permission to intervene pursuant to *Fed.R.Civ.P.* 24(b). State Coordinator of Elections David Collins (Collins) is properly before the Court as an original defendant in *Tate,* and the Davidson County officials are before the Court as persons bound by the

---

previous injunction pursuant to *Fed.R. Civ.P.* 65.

## FINDINGS OF FACT

The facts of this controversy are not disputed by the parties. In earlier proceedings in this case, *Tate v. Collins*, 496 F.Supp. 205 (W.D.Tenn.1980), which concerned absentee voting procedures for Tennessee prisoners convicted of "noninfamous" crimes, this Court included in its Final Consent Order a paragraph to be followed in determining a prisoner's voting residence.

The paragraph stated:

The registrant's right to register shall be determined in accordance with the provisions of Tennessee Code Annotated sections 2–2–120—2–2–122. A registrant presently incarcerated in a jail, workhouse, prison or other penal institution shall be presumed to legally reside at his last free-world residence prior to his conviction *unless a contrary intent is shown* pursuant to the Tennessee Code Annotated sections 2–2–120—2–2–122 (emphasis added).

Subsequent to entry of this Order, defendant Collins instructed county election officials throughout the state of Tennessee to reject the voter registration application of any prisoner who subjectively asserted on the application that the county of incarceration was his legal residence for voting purposes but whose last free-world residence was not the county of incarceration, absent some type of objective manifestation of a change of residence.

In 1981, the Tennessee General Assembly enacted Chapter 337 of the Public Acts of 1981 which repealed T.C.A. § 2–2–121 and deleted the subjective questions set forth in T.C.A. § 2–2–116 for determining legal residence for voting purposes. However, Chapter 337 replaced these subjective questions with the following subjective affirmation:

I, being duly sworn on oath (or affirmation) declare that the above address is my legal residence and that I plan to remain at such residence for an undetermined period of time and say that to the best of my knowledge and belief all the foregoing statements made by me are true.

The enactment of Chapter 337 did not alter defendant Collins' interpretation of the final consent order.

There are approximately 320 male inmates at the Tennessee State Penitentiary in Davidson County who are eligible to vote. Because Tennessee law now provides that anyone convicted of a felony after 1981 is ineligible to vote, the number of imprisoned eligible voters should not increase and can be expected to decrease gradually over time. In 1984, a number of inmates otherwise eligible to vote sought to register in Davidson County. The Davidson County election officials, acting upon instructions authorized by statute from defendant Collins, adopted a policy declining to recognize domicile in Davidson County for any inmate whose last free-world residence prior to incarceration was elsewhere than in Davidson County. That policy continues in effect according to depositions filed in this Court.

## CONCLUSIONS OF LAW

### A. *Grounds for Decision*

Intervenors have urged among other grounds for decision that defendants' actions are in conflict with a proper reading of the Final Consent Order as informed by the principles for establishment of domicile adopted by the state and federal courts and the legislature of Tennessee.

■ Because the issue before the Court can be decided on nonconstitutional grounds, it is unnecessary to decide whether the current Tennessee scheme either on its face or as applied is unconstitutional. The Court notes, however, that in developing a plan to regulate the voter registration process for prisoners, it is mindful of the necessity to narrowly tailor the least restrictive means necessary to promote the compelling state interest in prevention of voting irregularities. See *Kramer v. Union Free School District,* 395 U.S. 621,

632–33, 89 S.Ct. 1886, 1892, 23 L.Ed.2d 583 (1969).

### B. *Determinations of Voting Domicile*

Tennessee Code Annotated §§ 2–2–116, 2–2–120, 2–2–122 and 2–2–125 contain the following provisions salient to the determination of a prisoner's domicile for voting purposes:

1. § 2–2–122(a)(2) and (3), which state that, "A change of residence is generally made only by the act of removal joined with the intent to remain in another place.... A person does not become a resident of a place solely by intending to make it his residence. There must be appropriate action consistent with the intention."

2. § 2–2–122(a)(4), which states that, "A person does not lose his residence if, *with the definite intention of returning,* he leaves his home and goes to another ... place within this state for temporary purposes, even if of years duration." (emphasis added)

3. § 2–2–122(a)(5), which states, "The place where a married person's spouse and family have their habitation is presumed to be his place of residence, but a married person who takes up or continues his abode with the intention of remaining at a place other than where his family resides is a resident where he abides."

4. § 2–2–122(a)(6), which states that, "A person may be a resident of a place regardless of the nature of his habitation, whether house or apartment, mobile home *or public institution ...*" (emphasis added).

5. § 2–2–122(a)(7), which states, "A person does not gain or lose residence solely by reason of his presence or absence while employed in the service of the United States or of this state, or while a student at an institution of learning, or while kept in an institution at public expense, *or while confined in a public prison,* or while living on a military reservation." (emphasis added)

6. § 2–2–122(b), which states, "The following factors, *among other relevant*

*matters,* may be considered in the determination of where a person is a resident:

(1) His possession, acquisition or surrender of inhabitable property;

(2) Location of his occupation;

(3) Place of licensing or registration of his personal property;

(4) Place of payment of taxes which are governed by residence;

(5) Purpose of his presence in a particular place;

(6) Place of his licensing for activities such as driving;

(7) That he shall have been a resident of this state for a period of at least twenty (20) days prior to such registration. (emphasis added)

7. § 2–2–116, which states that the permanent registration record shall be "substantially as follows" and prescribes the following declaration: "I, being duly sworn on oath (or affirmation) declare that the above address is my legal residence and that I plan to remain at such residence for an undetermined period of time ..."

8. § 2–2–120 and –125, which state that, "The registrar shall determine, from the registrant's answers to the questions on the permanent registration record *and other questions, if necessary,* whether the registrant is entitled to register. If the registrar determines that the registrant is entitled to register, he shall declare the registrant a registered voter .... If the registrar determines that the registrant is not entitled to be registered, he shall tell the registrant the reason, ... that he has a right to appeal ... and offer him an appeal form. If the commission believes that the appellant has violated the law in registering, it shall report the matter to the grand jury and the district attorney general." (emphasis added)

■ The language of the Final Consent Order, *supra,* sets out three principles for the determination of a prisoner's voting domicile: (1) a presumption of domicile at the last free-world residence; (2) an opportunity for the prisoner to show a contrary

intent, that is, to rebut the presumption; and (3) an obvious direction that the prisoner's contrary showing and the overall resolution of the domicile issue should be accomplished pursuant to the statutory scheme. That statutory scheme contemplates an opportunity for a prisoner to establish a new domicile at the place of incarceration and provides guidelines relevant to the determination of the sufficiency of that showing. The Tennessee Supreme Court has said that domicile is "the home or habitation fixed in any place, without a present intention of removing therefrom." *Brown v. Hows,* 163 Tenn. 178, 182, 42 S.W.2d 210, 211 (1931). The United State Court of Appeals for the Sixth Circuit has elaborated:

> To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere. *Stifel v. Hopkins,* 477 F.2d 1116, 1126 (6th Cir.1973).

The requisite intent, thus, is that a person have "no present intention of changing" the place of abode, a quality the Supreme Court has termed "the essence of domicile." *Gilbert v. David,* 235 U.S. 561, 570, 35 S.Ct. 164, 167, 59 L.Ed. 360 (1919).

Historically, a prisoner or other person kept at an institution under legal compulsion had been held incapable of forming the requisite intention to effect a change of domicile to that new location. *See* Restatement (Second) Conflict of Laws § 17 and Comment C. In recent years there has been a shift away from this view. Courts in various jurisdictions have held it proper to permit prisoners or others under compulsion to attempt to establish new domicile at their "involuntary" location. *See, e.g., Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965) (soldiers for voting purposes); *Stifel v. Hopkins, supra* (prisoners for diversity); *Dane v. Board of Registrars,* 374 Mass. 152, 371 N.E.2d 1358 (1978) (prisoners for voting); *McKenna v. McKenna,* 282 Pa.Super. 45, 422 A.2d 668 (1980) (prisoners for divorce); *Krasnov v. Dinan,* 333 F.Supp. 751 (E.D.Pa.1971) (monks for diversity), *on rehearing,* 339

F.Supp. 1357 (E.D.Pa.), *aff'd,* 465 F.2d 1298 (3d Cir.1972).

The *Stifel v. Hopkins* opinion, however, did more than prescribe that a prisoner should be allowed to rebut a presumption of nonresidence. The court also said that involuntary presence should operate "as a presumption ordinarily requiring *more than unsubstantiated declarations to rebut.*" 477 F.2d at 1126 (emphasis added).

Although *Stifel* concerned domicile for purposes of diversity of citizenship, its principles can be adapted appropriately to the voting area. In *Carrington v. Rash,* 380 U.S. 89, 96, 85 S.Ct. 775, 780, 13 L.Ed.2d 675 (1965), the Court emphasized that a state may "take reasonable and adequate steps" to assure that voters fulfill the requirements of bona fide residence and thereby serve the state interest in protecting against voting irregularities. The Second Circuit has held in the area of student voting that a state will not run afoul of the equal protection clause by conducting a more "searching inquiry" of the factual circumstances of recognizable categories of persons who present "special problems" in determining residence. *Auerbach v. Rettaliata,* 765 F.2d 350, 353–55 (2d Cir. 1985). In *Stifel v. Hopkins, supra,* the Sixth Circuit said that in making the essentially factual determination of domicile for a prisoner,

> [T]he court should accord weight to [the prisoner's] declarations of intentions, but in the circumstances of this case the physical facts pertaining to [his] incarceration and to the conduct of his personal affairs assume perhaps a greater than usual significance.... The Court should consider factors such as the possibility of parole ..., the manner in which [he] has ordered his personal and business transactions, and any other factors that are relevant to corroboration of [the prisoner's] statements. 477 F.2d at 1126–27 (footnotes omitted).

This approach comports with the Tennessee statutory scheme, which by its own terms, permits a prisoner to establish domicile in his county of incarceration. It

states, for example, that a person *may* have voting residence in a "public institution." *Tenn.Code Ann.* § 2–2–122(a)(6). It enumerates prisoners along with soldiers, students and persons kept in other institutions at public expense as persons who neither "gain nor lose residence solely by reason" of their removal to those institutions. *Tenn.Code Ann.* § 2–2–122(a)(7). The statute clearly provides for election officials to seek from certain applicants for registration additional information pertinent to determination of their domiciliary intent. *Tenn.Code Ann.* § 2–2–120. Finally, the statute lists a number of factual circumstances that may guide officials to a proper determination of domicile, including the location of family, possession of property, payment of taxes, and licensing of certain activities. *Tenn.Code Ann.* §§ 2–2–122(a)(5)—(b)(1)—(7).

### SPECIFIED PROCEDURES

■ With this view of the statutory scheme and of the appropriate state interests in mind, the Court directs the defendants to adopt the following approach. Prisoners shall be divided into three groups determined by the length of their remaining periods of incarceration. For each group, election officials may require some independent corroboration of the prisoner's assertions of domiciliary intent. The type of corroboration shall differ depending upon the differing futures open to members of these groups.

Each prisoner desiring to vote in the county of incarceration shall be required to sign a statement subject to the penalties for perjury, including disenfranchisement, that he or she has

(1) no spouse or other family member in the county of last free-world residence with whom he or she intends to reside at that location in the future;

(2) no real or personal property in the county of last free-world residence upon which taxes can be levied; and

(3) no plan upon release from prison to reside in a county in Tennessee other than the county of incarceration.

Each of these prisoners must provide with his or her application for registration the above sworn statement, accompanied by a sworn statement from a free-world resident of Tennessee. The accompanying statement shall attest, to the best knowledge of the affiant and subject to the penalties for perjury, including disenfranchisement, that the above three assertions made by the prisoner are true. The free-world affiant may be (1) any resident of the county of the prisoner's last free-world residence; or (2) a resident of any other Tennessee county, including the county in which the prisoner is incarcerated, who declares that he or she has known the prisoner for more than one year.

For purposes of domicile determination, prisoners providing the two sworn statements shall be broken into three categories:

(1) Prisoners with death sentences or sentences carrying earliest parole dates beyond age 80 shall be determined as domiciled in the county of incarceration if they provide the two requisite sworn statements.

(2) Prisoners within one year of their earliest release dates shall be determined as domiciled in the county of incarceration if they provide the two requisite sworn statements and provide a sworn statement from a free-world counselor, parole officials, or representative of an organization which specializes in providing post-release services to former inmates that the inmate has definite plans for post-release residence in the county of incarceration. Obviously, a prisoner with definite post-release plans to return to the county of last free-world residence or any other county than the county of incarceration shall be determined as domiciled in the county of last free-world residence or other county. A prisoner in this category without definite post-release plans shall be treated as a prisoner in category (3).

(3) All other prisoners who provide the two requisite sworn statements shall be given the opportunity to provide, under penalties of perjury at the time of application for registration, information pertinent to their interests in the county of

incarceration. Relevant information would include, but is not limited to, the presence of a spouse, other relative, or close friend in the county of incarceration; documentation of visits to the prisoner by that person or those persons; subscriptions to local newspapers or periodicals; memberships in local organizations of a religious or secular character; grant of living quarters after release in county of incarceration; grant of living quarters in a half-way house in county of incarceration; affirmation of employment in county of incarceration after release; or a sworn statement by a counselor or member of the clergy that the prisoner considers the county of incarceration or the prison his home and that the prisoner takes an active interest in community affairs in said county. A prisoner who provides information satisfying one or more of these criteria, or demonstrating substantially equivalent information, shall be deemed domiciled in the county of incarceration.

Election officials shall draft and make available forms to provide prisoners with appropriate vehicles to provide this information.

IT IS SO ORDERED.