# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 17, 2021 Session

## ELIZABETH ANNE SYKES v. CHAD STEVEN SYKES

**Appeal from the Chancery Court for Williamson County**
**No. 47608W   Joseph A. Woodruff, Judge**

———————————————————

**No. M2020-00261-COA-R3-CV**

———————————————————

This appeal arises from a divorce proceeding filed by Wife in Tennessee. Husband objected to the trial court's divorce jurisdiction and any custody determination concerning the parties' minor children. Ultimately, the trial court found that it had jurisdiction over the parties' divorce, as well as any custody determinations. In connection with granting the parties a divorce, the trial court awarded Wife an equalizing distribution of the marital assets and attorney's fees. The trial court also found Husband to be in contempt due to his alleged violation of the statutory restraining order set out in Tennessee Code Annotated section 36-4-106(d) and his failure to return one of the parties' minor children to Wife's custody following summer visitation. Husband now appeals numerous aspects of the trial court's findings. Upon our review of the record before us, we affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Benjamin Lewis, Murfreesboro, Tennessee, for the appellant, Chad Steven Sykes.

Jacob T. Thorington, Franklin, Tennessee, for the appellee, Elizabeth Anne Sykes.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Chad Sykes ("Husband") and Elizabeth Sykes ("Wife") were married in 2014 in Williamson County, Tennessee. Shortly after their marriage, the parties relocated to Missouri where they purchased a home and had two children. In May of 2018, after

Husband became unemployed, the parties returned to Williamson County to live with Wife's parents.[1]

Wife filed for divorce on August 23, 2018, and Husband was personally served with a summons and copy of the complaint in Williamson County on the same date. As part of her divorce complaint, Wife alleged irreconcilable differences and, in the alternative, inappropriate marital conduct and that "the complaints she has against Husband occurred in Tennessee since the parties relocated to the state in May, 2018, up to and including that Husband separated from Wife in August, 2018." Specifically, Wife alleged that Husband was overly controlling of her to the extent that he argued with her over her choice of and cost of her attire, hid food from her, and was controlling of the parties' finances. Wife also requested that the trial court approve her parenting plan and name her the primary residential parent, award Husband "reasonable parenting time," and require that he pay child support. Attached to Wife's complaint for divorce was a form order purporting to be a statutory restraining order in compliance with Tennessee Code Annotated section 36-4-106(d) but which did not accurately follow in all respects the language of the statute.[2] In response to Wife's filing, Husband filed a motion to dismiss the divorce complaint for lack of jurisdiction. Specifically, Husband contended that, at the time of her filing, Wife had not been a Tennessee resident for at least six months and that, because the acts complained of in Wife's complaint did not occur in Tennessee, there was no basis for the trial court to exercise jurisdiction. Husband also argued that the trial court did not have jurisdiction over custody issues regarding the parties' minor children because Tennessee was not the home state of the children.[3]

A hearing on Husband's motion to dismiss was initially held on September 27, 2018, but it was continued to October 26, 2018, to allow the parties to submit supporting affidavits. Wife submitted various affidavits from herself and her parents, as well as documentation, evidencing the parties' move to Tennessee. After the hearing on Husband's motion resumed, the court issued its findings in a detailed and thorough order dated November 15, 2018. Therein, the trial court found jurisdiction to be proper over the parties' divorce, as well as over matters involving custody of the parties' minor children. Notably, the trial court found Husband's testimony to be inconsistent and not credible concerning his contention that "he never subjectively intended to change his domicile to Tennessee." Indeed, the trial court stated in its findings that it "place[d] very little weight on Husband's testimony and [did] not credit his testimony over the countervailing evidence

---

[1] In his reply brief, Husband contends that he neither resided in nor intended to reside in Tennessee. However, as we will discuss in more detail later, we conclude that Husband's statements are without merit due to credibility findings by the trial court and evidence contained in the record.

[2] As alluded to here and discussed later in this Opinion, the form order's failure to accurately include the statutory language is of consequence in this appeal.

[3] Husband also filed a complaint for divorce in Missouri after Wife filed her complaint in Tennessee. At some point during the pendency of the proceedings below, the Missouri complaint was dismissed.

offered by Wife's various Affidavits filed in connection with the hearing on the pending Motion."

Following the trial court's order on Husband's motion to dismiss, Husband filed an answer to the complaint. On April 3, 2019, Wife filed a motion for temporary support and for a temporary parenting plan, to which she attached a statement of income and expenses, a child support worksheet, and a proposed parenting plan. During the pendency of the divorce, when Husband was still represented by legal counsel, the trial court entered various agreed orders concerning holiday travel arrangements for the parties' children.

By an order entered on May 1, 2019, the trial court permitted Husband's counsel to withdraw. Husband proceeded pro se for the remainder of the divorce proceedings. After his counsel's withdrawal, the parties reached an oral agreement for Husband to have his older son with him in Missouri for the entire summer and, according to Wife, to return the child in August prior to the start of school in Williamson County. During this time, the parties also participated in mediation, which was unsuccessful. Wife subsequently filed a motion to set the case for trial, which was scheduled to be heard on August 22, 2019.

On August 15, 2019, Wife filed an ex parte request for a temporary restraining order to enjoin Husband from enrolling the older child in school in Missouri, as well as a motion requiring Husband to return the child to Tennessee. In her filing, Wife stated that Husband had communicated to her that he did not intend to return the child to Tennessee and that he was instead going to enroll him in school in Missouri. In an order entered August 16, 2019, the trial court granted Wife's ex parte temporary restraining order and ordered Husband to appear in court with the child for a hearing on August 22, 2019.

A hearing was held on August 22, 2019. Husband was present for the hearing, but the minor child was not. Husband told the trial court that he had no knowledge of its August 16th order. Ultimately, the trial court found that Husband did in fact receive service of the trial court's order on August 16, 2019, via email, which required him to appear before the court with the child in Tennessee. It also found that Husband willfully violated the statutory restraining order set out in Tennessee Code Annotated section 36-4-106(d). Due to Husband's failure to appear before the trial court with the child and his purported violation of the statutory restraining order, the trial court found him to be in civil contempt. As a result, the trial court ordered Husband to be incarcerated until the child was returned to Williamson County and "presented to the Magistrate at the Sheriff's Office." Upon return of the child to Wife, the trial court held that Husband's contempt would be purged.

The divorce case was tried by the court, and in a subsequent preliminary order following the trial, the trial court declared the parties divorced and provided a detailed and thorough analysis on its findings to date. It also adopted Wife's parenting plan and ordered Husband to pay Wife child support. Further, it awarded Wife a judgment in the amount of $12,479.00, representing child support arrearage of $2,535.00 and attorney's fees.

Thereafter, the trial court entered its "Memorandum and Order." In this order, the trial court incorporated its findings of fact and conclusions from its prior preliminary order and further awarded Wife an equalizing distribution of the marital estate. Husband thereafter filed a notice of appeal.

## ISSUES PRESENTED

Husband raises six separate issues on appeal for our review, which are slightly restated as follows:

1. Whether the trial court erred in determining that the Williamson County Chancery Court had jurisdiction over the parties' divorce.
2. Whether the trial court erred in determining that the Williamson County Chancery Court had jurisdiction over the child custody determination of the parties' minor children.
3. Whether the trial court erred in finding Husband in contempt for violation of the statutory restraining order and the trial court's August 16, 2019 order.
4. Whether the trial court erred in making its equitable distribution of marital assets and debts.
5. Whether the trial court erred in awarding attorney's fees to Wife as alimony in solido without applying the factors relevant to an award of alimony, including, but not limited to, Husband's ability to pay.
6. Whether the trial court erred in failing to provide Husband an opportunity to question or challenge the attorney's fees of Wife's counsel.

In turn, Wife raises only a single additional issue on appeal, restated as follows:

1. Whether Wife is entitled to her attorney's fees on appeal.

## STANDARD OF REVIEW

When reviewing a trial court's findings of fact, the appropriate standard of review is de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002). A trial court's conclusions of law, however, are reviewed de novo with *no* presumption of correctness. *Ramsay v. Custer*, 387 S.W.3d 566, 567 (Tenn. Ct. App. 2012) (citing *State ex rel. Pope v. U.S. Fire Ins. Co.*, 145 S.W.3d 529, 533 (Tenn. 2004)).

## DISCUSSION

*Whether the Trial Court Had Jurisdiction Over the Parties' Divorce*

Husband's first issue on appeal concerns whether the trial court erred in finding that

it had jurisdiction over the parties' divorce. Specifically, he contends that it is Missouri, rather than Tennessee, that has jurisdiction.

> Tennessee Code Annotated section 36-4-104(a) states:
>
> A divorce may be granted for any of the causes referenced in § 36-4-101 if the acts complained of were committed while the plaintiff was a bona fide resident of this state or if the acts complained of were committed out of this state and the plaintiff resided out of the state at the time, if the plaintiff or the defendant has resided in this state six (6) months next preceding the filing of the complaint.

Tenn. Code Ann. § 36-4-104(a).

Here, it is clear from the record that neither Husband nor Wife resided in Tennessee for six months preceding the filing of Wife's complaint for divorce. Therefore, in order for a Tennessee court to exercise jurisdiction, there must be a finding that "the acts complained of were committed while the plaintiff was a bona fide resident of this state." *Id.*; *see also Wilken v. Wilken*, No. W2012-00989-COA-R3-CV, 2012 WL 6727197, at *5 (Tenn. Ct. App. Dec. 27, 2012) ("The first portion of the statute authorizes the trial court to exercise jurisdiction over the case 'if the acts complained of were committed while the plaintiff was a bona fide resident of [Tennessee.]'"). Section 36-4-104(a) "makes Tennessee residency **by at least one of the parties** a condition precedent to a court having jurisdiction to grant a divorce." *Conley v. Conley*, 181 S.W.3d 692, 696 (Tenn. Ct. App. 2005) (emphasis added). Our courts have previously interpreted "residence" as used in section 36-4-104(a) to be synonymous with that of "domicile." *Id.* (citing *Brown v. Brown*, 261 S.W. 959 (Tenn. 1924); *Wiseman v. Wiseman*, 393 S.W.2d 892, 895 (Tenn. 1965); *Barnett v. Barnett*, No. 01A01-9605-CH-00228, 1998 WL 787043, at *3 (Tenn. Ct. App. Nov. 13, 1998)). "Domicile" has been defined by the Tennessee Supreme Court as:

> [T]he place where a person has his principal home and place of enjoyment of his fortunes; which he does not expect to leave, except for a purpose; from which when absent, he seems to himself a wayfarer; to which when he returns, he ceases to travel.

*Wiseman*, 393 S.W.2d at 894. In order for an individual to create a domicile in Tennessee, that person must "not only intend to establish a personal home in this state but must also act consistently with this intention." *Conley*, 181 S.W.3d at 696 (citing *Greene v. Greene*, 309 S.W.2d 403, 411 (Tenn. 1957)). "[T]he person must also have no present intention or expectation of changing his or her residence to some other state." *Id.* (citing *Tate v. Collins*, 622 F. Supp. 1409, 1412 (W.D. Tenn. 1985)). When making a determination as to domicile, a court considers an individual's declarations and conduct, as well as "all other relevant facts and circumstances." *Id.* (citing *Wiseman*, 393 S.W.2d at 895).

The trial court found that "[w]hile Wife and the minor children have not resided in Tennessee for six months preceding the filing of the Complaint for Divorce, the Court finds that the acts complained of regarding the Divorce occurred within this state while Wife and Husband were bona fide residents of Tennessee, and therefore, jurisdiction over the Complaint for Divorce is proper." Specifically, it found that "Wife and Children relocated to Tennessee on May 3, 2018[,] and Husband moved to Tennessee after preparing the former marital residence to be sold." It also noted Husband's testimony that he "joined in the move with Wife to Tennessee in order 'to work on the marriage' for 'as long as it took.'"[4] Additionally, the trial court found facts present to support a finding that the acts amounting to inappropriate marital conduct alleged in Wife's divorce complaint occurred "while both parties resided in Tennessee."

In his brief, Husband contends that the acts complained of in Wife's complaint for divorce "could not have occurred in Tennessee because he never moved his residence to Tennessee." As to this argument, we first note that it appears to assume that Husband's residency may obviate the trial court's jurisdiction over the divorce matter. However, this is an incorrect interpretation of the statute. It matters not whether Husband himself "moved his residence to Tennessee."[5] Rather, the statute, in relevant part, states that "a divorce may be granted for any of the causes referenced in § 36-4-101 if the acts complained of were committed **while the plaintiff was a bona fide resident of this state**." Tenn. Code Ann. § 36-4-104(a) (emphasis added). As we perceive it, Husband's residence is technically irrelevant to this statutory question. Rather, the pertinent inquiry is whether Wife was a bona fide resident of this state when the acts complained of in her divorce complaint were committed. Indeed, acts giving rise to a divorce may occur in Tennessee while one of the parties is not a bona fide resident pursuant to the statute. *See Barnett*, 1998 WL 787043, at *2–4 (finding jurisdiction to be proper where the wife was a Florida resident, but the husband was a bona fide Tennessee resident and the act complained of in the divorce action occurred in Tennessee). Based on the record before us, we find that the

---

[4] To further support its findings, the trial court cited numerous facts evincing Wife's residence in Tennessee, which included that Wife had obtained a Tennessee driver's license, that Wife had registered her vehicle in Tennessee, that Wife had found Tennessee employment, and that the children were enrolled in daycare in Williamson County, Tennessee. Ultimately, the trial court found that "Wife's principal home is now in Tennessee, and she no longer has any connection in Missouri. Wife was a bona fide resident when she filed her divorce action." The trial court also found that Husband "failed to show continued residence in Missouri," that he "changed his license and vehicle registration to Tennessee," and that he "also sought employment in Tennessee" prior to Wife's filing for divorce.

[5] Regarding Husband's testimony as to the start of the marital problems and his residency, the trial court found him to not be credible. "Where the trial court's factual conclusions rest on the evaluation of a witness's credibility, we will not re-evaluate that assessment of witness credibility absent clear and convincing evidence to the contrary." *Sircy v. Metro. Gov't of Nashville & Davidson Cty.*, 182 S.W.3d 815, 818 (Tenn. Ct. App. 2005) (citing *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)). Here, we find no indication of such clear and convincing evidence such as to disturb the trial court's assessment as to Husband's credibility.

trial court properly found that Wife was a bona fide resident of Tennessee when the acts complained of in her divorce complaint, as previously discussed herein, occurred in Tennessee. Therefore, the trial court properly exercised jurisdiction over the parties' divorce pursuant to Tennessee Code Annotated section 36-4-104(a).

*Whether the Trial Court Had Jurisdiction Over the Custody of the Parties' Minor Children*

Husband's second issue on appeal concerns whether the trial court properly exercised jurisdiction over the parties' minor children such as to make a custody determination.

Before making a determination concerning child custody, a trial court must exercise proper jurisdiction. Promulgated in 1997, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") "establishes standards for the initial entry of child custody determinations that will be entitled to full faith and credit in all fifty states as a matter of federal law, specifies the circumstances under which a state court can modify another state's child custody determination, and provides expedited procedures for the enforcement of both initial and modified child custody determinations." *State v. McKinnon*, 206 S.W.3d 532, 544 (Tenn. Ct. App. 2006).

Here, the trial court found jurisdiction to be proper under Tennessee's codified version of the UCCJEA. As a general proposition, the statutory scheme initially provides as follows as it pertains to a state's jurisdictional authority to oversee child custody matters:

(a) Except as otherwise provided in § 36-6-219, a court of this state has jurisdiction to make an initial child custody determination only if:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]

Tenn. Code Ann. § 36-6-216(a)(1). In its holding, the trial court conceded that Tennessee was not the home state of the children, and it also found that Missouri was not the home state of the children pursuant to Tennessee Code Annotated section 36-6-205(7). Section 36-6-205(7) provides, in pertinent part, that the "home state" is "the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months **immediately before** the commencement of a child custody proceeding." Tenn. Code Ann. § 36-6-205(7) (emphasis added). The trial court further noted that neither Wife nor Husband had a residence in Missouri at the time of the filing of the divorce action, while also holding that "no state qualifies" for "home state" jurisdiction under Tennessee Code

- 7 -

Annotated section 36-6-216(a)(1).

In light of the above findings and conclusions, the trial court noted that Tennessee Code Annotated section 36-6-216(a)(2) provided an "alternate avenue" of jurisdiction. Section 36-6-216(a)(2) provides that a Tennessee court may have jurisdiction if:

> A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under §§ 36-6-221 or 36-6-222, and:

> (A)     The child and the child's parents, *or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence*; and

> (B)     Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

Tenn. Code Ann. § 36-6-216(a)(2) (emphasis added). We conclude that the trial court's recognition of this alternate avenue of jurisdiction was not in error. Indeed, while neither Tennessee, nor any state, qualified to exercise jurisdiction under Tennessee Code Annotated section 36-6-216(a)(1), we agree, as discussed below, that the record supports a finding of both a significant connection with Tennessee, as well as substantial evidence concerning the children's "care, protection, training, and personal relationships," under section 36-6-216(a)(2).

First, section 36-6-216(a)(2)(A) requires that the children and at least one parent have a significant connection with Tennessee, other than a "mere physical presence." Here, the record makes clear that Husband[6] and Wife, along with the children, relocated to Tennessee in May of 2018. Wife and both sets of grandparents reside in Tennessee. Wife is employed in Tennessee, has obtained a Tennessee driver's license, and has also registered her car in Tennessee. Husband, despite his contentions, previously resided in Tennessee[7] and, among other things, rented a storage unit in Tennessee to store his belongings. As such, the trial court found that there existed a significant connection between the children, their parents, and Tennessee. We agree.

---

[6] Despite Husband's contention that he never resided in Tennessee, nor intended to, the trial court found Husband's testimony concerning his intentions and residence not credible. Moreover, we also note that there is no transcript of the hearing on Husband's motion to dismiss for lack of jurisdiction in the appellate record. As such, "we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings." *Williams v. Williams*, 286 S.W.3d 290, 297 (Tenn. Ct. App. 2008) (quoting *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1993)).

[7] As noted earlier, the trial court found that neither Wife nor Husband had a residence in Missouri at the time the divorce action was filed. Husband was personally served with process in Williamson County.

Second, section 36-6-216(a)(2)(B) requires that there be "substantial evidence" available in Tennessee concerning the children's "care, protection, training, and personal relationships." We also find this prong satisfied by the proof available in the record. We again note that Wife and both sets of grandparents reside in Tennessee and that both children began attending daycare in Tennessee. Indeed, in its order finding jurisdiction appropriate, the trial court noted that there existed in Tennessee, "substantial evidence from Wife's employer, both sets of grandparents, and the teachers and daycare workers who care for the children concerning the children's care, protection[,] training, personal relationships, and like factors weighing upon the comparative fitness of the parties to be awarded custody." Accordingly, we conclude that there is "substantial evidence," as required by the statute, concerning the "care, protection, training, and personal relationships" of the children and that the trial court properly exercised jurisdiction over the parties' children for purposes of determining custody. Although Tennessee was not the children's "home state," section 36-6-216(a)(2) permits Tennessee jurisdiction under the facts found by the trial court in this case. As such, we affirm the trial court on this issue.

*Whether the Trial Court Erred in Finding Husband in Civil Contempt*

Husband's next issue on appeal concerns whether, at the hearing on August 22, 2019, the trial court erred in finding him in civil contempt.

Husband and Wife came to an agreement in May 2019, pursuant to which Husband was permitted to have one of the parties' minor children with him in Missouri beginning on May 30th until the beginning of school in Williamson County in August.[8] Husband subsequently notified Wife that he was not going to return the child, as agreed, and was, in fact, going to enroll the child in school in Missouri. On August 15, 2019, Wife filed an "Ex Parte Request for Temporary Restraining Order, To Set Motion on August 22, 2019, and To Order Father to Bring Child to Tennessee on August 22, 2019" (hereinafter referred to as "Ex Parte Request"). She also filed a separate motion titled "Motion to Return Child to Tennessee and to Mother's Care" (hereinafter referred to as "Motion to Return Child"). On August 16, 2019, the trial court entered an order stating that Husband "is **enjoined and restrained** from enrolling the minor child in any school in Liberty Missouri." It further ordered that Wife's Motion to Return Child was to be heard on August 22, 2019. Additionally, the trial court ordered Husband to return the parties' minor child to Tennessee and to appear, with the child, in court on that date.

At the hearing on August 22, 2019, Husband appeared without the parties' minor child. Husband told the court he was unaware of the trial court's August 16th order

---

[8] The record contains no transcript of the hearing from which the court made this finding in its order of August 23, 2019. Therefore, "we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings." *Williams*, 286 S.W.3d at 297 (quoting *Sherrod*, 849 S.W.2d at 783).

requiring him to appear with the child in court. Instead, he contended, he was appearing for Wife's previously filed motion that was set for a hearing after the parties' failed mediation.[9] However, the trial court concluded that Husband had received proper service of the order. Specifically, it found that Wife's counsel had emailed him a copy of the trial court's order on the same date of filing. Ultimately, the trial court found Husband in contempt on two different bases. First, the trial court found Husband in contempt for his alleged violation of the statutory restraining order outlined in Tennessee Code Annotated section 36-4-106. Second, the trial court found Husband in contempt for his failure to bring the child before the court as previously ordered. Now on appeal, Husband argues that the trial court improperly found him in contempt on both bases. We will address each matter separately.

First, we address the trial court's finding that Husband was in contempt for his failure to bring the parties' minor child before the court in accordance with the August 16th order. Husband contends he had no notice of this order and, thus, it was improper for the trial court to hold him in contempt on this basis. Specifically, Husband takes issue with the trial court's finding that he received proper service of its order via email pursuant to Rule 5 of the Tennessee Rules of Civil Procedure.

Although the trial court was not inaccurate in recognizing that email is an available method of service under Rule 5, Rule 5.02 specifically provides that service sent via email may be effectuated "on any **attorney**." Tenn. R. Civ. P. 5.02(2)(a) (emphasis added). Here, Husband was without counsel at the time of email, and the attempted service was on him directly as a pro se individual, not on an "attorney." Because Rule 5.02(2)(a) specifically provides that email service is proper "on any **attorney**," *id.* (emphasis added), and Rule 5 does not provide that email service is permitted otherwise, the trial court's reliance on Rule 5 was in error. Service on Husband by email was not proper, and the trial court erred in finding him in contempt with respect to the August 16th order.

Next, we address Husband's contention that the trial court erred when it found that he "willfully failed to return the child to Tennessee and that his refusal is a willful violation of the statutory restraining order in T.C.A. § 36-4-106." The court's order reflects that its contempt analysis on this subject was in reference to the specific statutory language codified at Tennessee Code Annotated section 36-4-106(d)(5), a provision which contains an injunction generally "restraining both parties from relocating any children of the parties outside the state, or more than fifty (50) miles from the marital home, without the permission of the other party or an order of the court." Tenn. Code Ann. § 36-4-106(d)(5). Had the form order attached to Wife's complaint accurately included this statutory language, it would have been proper for the trial court to find Husband in contempt of it.

---

[9] During the summer, the parties had participated in mediation, which was unsuccessful. After the mediation failed, Wife filed a motion to set the case for trial. That motion was scheduled to be heard on August 22, 2019.

Indeed, the trial court found that the parties had an agreement for Husband to have the child with him for the summer until the beginning of school but that Husband violated that agreement by willfully failing to return the child to Wife's custody. The problem that exists here, however, is that the statutory restraining order language contained in Tennessee Code Annotated section 36-4-106(d)(5) was *not* included in the form order attached to Wife's complaint. The language actually contained in the form order attached to Wife's complaint provided for an injunction which restrained parents from relocating children "without permission of the Court or by consent order," language which is in effect more restrictive than that required by the statute.[10]

The failure to accurately include the statutory provision the trial court found Husband to be in contempt of is not without consequence. Indeed, because the provision included in section 36-4-106(d)(5) was not attached to the complaint, it was not in effect against Husband. The statute is clear on this issue, as it provides that the statutory injunctions become an order of the court upon "fulfillment of the *requirements*" of subsection (d), which includes the requirement that the "provisions of these injunctions shall be attached to the summons and the complaint." *See* Tenn. Code Ann. § 36-4-106(d)(6) (emphasis added).[11] Because the statutory provision relied upon by the trial court was not included in the form order attached to the complaint, it was not in effect as an order against Husband, and Husband could therefore not be held in contempt of it.[12]

In light of the foregoing analysis, we conclude that the trial court erred in holding Husband in contempt for violating its August 16th order which had directed that he appear with the minor child before the trial court. We further conclude that the trial court erred in holding Husband in contempt for violating Tennessee Code Annotated section 36-4-106(d). We, therefore, reverse the trial court's findings of contempt.

---

[10]Although not at issue in the present matter, we note that the form statutory restraining order also contained similar more restrictive language in two other provisions contrary to the actual statutory language required by section 36-4-106(d).

[11] The statute is clear that the provisions of the injunctions in Tennessee Code Annotated section 36-4-106(d) "shall be" attached to the complaint. Tenn. Code Ann. § 36-4-106(d). Parties are not precluded, however, from "applying to the court for further temporary orders, an expanded temporary injunction, or modification or revocation of th[e] temporary injunction." *Id.*

[12] Somewhat confusingly, we observe that the trial court also made findings suggesting that the parties' agreement "had no protection from the statutory restraining order" because it was never reduced to writing or entered by the court. Based on our reading of the statutory language in Tennessee Code Annotated section 36-4-106(d)(5), the provision invoked by the trial court, there is no requirement that the parties *must* reduce their agreement to writing or that the court formally sanction the relocation. The terms of the statutory restraining order that is to be attached to the complaint allow for relocation with "permission of the other party." Tenn. Code Ann. § 36-4-106(d)(5). It is of course possible that the court's specific conclusions on this matter, including the purported need for a writing, were divined not from the actual text of the referenced statute, but were instead a product of resorting to the more restrictive language of the court's form attached to the complaint. Assuming this is the case, we note again that certain of the injunctive provisions attached to the complaint did not accurately follow the statutory text *as required* by Tennessee Code Annotated section 36-4-106(d).

*Whether the Trial Court Erred in Making an Equitable Distribution of the Parties'*
*Marital Assets*

Husband's next issue on appeal concerns whether the trial court erred in making an equitable distribution of the parties' marital assets after the parties had previously agreed upon a division of property prior to trial.

"The trial court has broad discretion in fashioning an equitable distribution of marital property, and an appellate court will defer to the trial court's distribution unless it is inconsistent with the statutory factors or lacks proper evidentiary support." *Trezevant v. Trezevant*, 568 S.W.3d 595, 607 (Tenn. Ct. App. 2018) (citing *Baggett v. Baggett*, 422 S.W.3d 537, 543 (Tenn. Ct. App. 2013)).

In the present case, the parties came to an agreement prior to trial concerning the division of the net proceeds realized from the sale of their Missouri residence as well as certain tangible personal property. However, during trial, Wife contended there was an inequity in the distribution to be received by the parties. Specifically, Wife contended that the vehicle Husband received in the divorce allowed him to leave the marriage with more equity. As a result, Wife requested that the trial court grant an "equalizing distribution" in order to correct the disparity. Husband and Wife contested the value of Husband's vehicle, with Husband arguing that the vehicle was worth about $26,000.00 and Wife arguing that it was worth about $33,338.00. In its order, the trial court accepted Husband's value of the vehicle but noted that there was a disparity in Husband's favor in the amount of $11,814.00 in the parties' respective shares of the marital estate.[13] In determining the amount of the disparity, the trial court considered the amount of debt Husband still had on the vehicle. In order to rectify this disparity, the trial court found that Wife was entitled to receive an "equalizing distribution" from Husband in the amount of $5,900.00.

On appeal, Husband argues that the trial court erred in granting Wife an "equalizing distribution." Specifically, he asserts that the trial court failed to consider the value of Wife's collection of glass marble, which was marital property she received in the divorce. Husband contends that the value of Wife's marble collection is such that it would have obviated the need for the "equalizing distribution," as he claims that Wife's collection is worth between "$25,000 and $30,000."

Based upon our review of the record on appeal, we do not find there to be sufficient evidence to conclude that the trial court's grant of the equalizing distribution is reversible error. While Husband insists that Wife's collection of glass marble is worth between $25,000.00 and $30,000.00, we find that the proof in the record is uncertain. "The value

---

[13] In this same order, the trial court also found that the value of Wife's vehicle, deemed to be her separate property, was offset by the value of Husband's separately owned gun collection and his hunting and fishing gear.

of marital property is determined by considering all relevant evidence regarding value and the burden is on the parties to produce competent evidence of value." *Powell v. Powell*, 124 S.W.3d 100, 104 (Tenn. Ct. App. 2003) (citing *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987)). Here, the only information available as to the value of Wife's collection of glass marble is her testimony, which is admittedly tenuous at best. Wife herself is unsure as to whether her own valuation of the collection is accurate and the collection has never been appraised. Moreover, Wife testified that she still owes several thousands of dollars in credit card debt, of which some is attributable to the marble collection. Husband, on the other hand, presented no evidence concerning the value of the collection.

As supported by this Court's discussion in *Powell*, the trial court was well within its discretion to determine the value of Wife's collection by considering all the relevant evidence regarding the value. Here, it appears that the trial court, in considering Wife's uncertain testimony and the lack of additional evidence, as well as the significant debt obligations Wife appeared to have with respect to any purported value, opted to not find the collection valuable such as to affect its determination of awarding Wife an equalizing distribution. Based upon our review of the record on appeal, we find no error on part of the trial court.

*Whether the Trial Court Erred in Awarding Wife Attorney's Fees as Alimony in Solido*

Husband's next issue on appeal concerns whether the trial court erred in awarding Wife attorney's fees as alimony in solido without making a determination concerning the relevant factors.

Alimony in solido is alimony that "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 108 (Tenn. 2011) (quoting Tenn. Code Ann. § 36-5-121(d)). Our Supreme Court has stated:

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may

- 13 -

properly grant an award of attorney's fees as alimony.

*Id.* at 113 (internal citations omitted).

In the present matter, the trial court awarded Wife a judgment against Husband for attorney's fees in the amount of $5,369.00 in connection with her successful defense against Husband's challenge to the trial court's jurisdiction. The trial court predicated its award on two independent legal theories. First, it noted that Wife was entitled to recover her reasonable attorney's fees as the prevailing party pursuant to Tennessee Code Annotated section 36-6-236. Section 36-6-236 states that,

> [t]he court may award the prevailing party, including a state, necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings.

Tenn. Code Ann. § 36-6-236. Thus, because Wife was the prevailing party on Husband's challenge to the trial court's jurisdiction, the trial court determined that she was entitled to an award of fees at the trial court's discretion. The trial court also found that Wife was entitled to recover attorney's fees as alimony in solido "because Husband's objection to this Court's jurisdiction involved an element of bad faith and dishonesty."

In his brief, Husband appeals only the trial court's grant of attorney's fees to Wife as alimony in solido. His argument does not engage with nor argue against the trial court's award of fees pursuant to section 36-6-236. As such, we find any argument as to the trial court's award of fees to Wife pursuant to section 36-6-236 waived. Moreover, because the trial court predicated its award of fees on two independent legal theories and Husband challenges only one of those theories, we affirm the award of fees in light of Husband's waiver.

The trial court also awarded Wife a judgment of $4,575.00, representing her attorney's fees in connection with Husband's civil contempt. Because we are reversing the trial court's finding of contempt, there cannot be an award of fees in this regard. As such, we reverse the trial court's award of fees to Wife as a result of Husband's contempt.

Thus, although we affirm the trial court's award of fees to Wife in connection with Husband's challenge to the trial court's jurisdiction, we reverse the award of fees based on Husband's contempt.

*Whether the Trial Court Erred in Failing to Provide Husband an Opportunity to Challenge Wife's Attorney's Fees*

Husband's final issue on appeal concerns whether the trial court erred in failing to provide him with an opportunity to challenge Wife's attorney's fees.

In his brief, Husband argues that the trial court erred by not presenting him an opportunity to "review or challenge the award of attorney's fees on the basis that they were not reasonable or necessary," and he claims the trial court's decision on the attorney's fees "came immediately at the conclusion of trial . . . [and] he was not afforded an opportunity to review the attorney's fees or to challenge the amount of attorney's fees." Specifically, Husband contends that the trial court "failed entirely to provide [Husband] an opportunity to cross-examine the requesting party's lawyer regarding his fees or present proof of his own." Rather, Husband asserts, "the [trial court] took the affidavit of [Wife's] counsel and granted exactly the fees requested." However, as we will explain in further detail below, we find Husband's recitation of the events that are contained in the record to be inconsistent at best, and thus, we find his argument in this regard to be without merit.

In reviewing the transcript of the hearing in the record on appeal, we note that Wife's attorney did in fact introduce an affidavit regarding attorney's fees as evidence. The court then asked Husband whether he objected to the introduction of the affidavit, which he stated he did not. Shortly thereafter, Wife's attorney concluded his examination of Wife, thus allowing Husband to cross-examine her. Based on our review of the transcript, we find no indication that Husband ever objected to the fees or initiated questioning as to the fees although he had the opportunity to do so. Husband asserts that, "[p]arties opposing a request for attorney's fees should be afforded a fair opportunity to cross-examine the requesting party's lawyer or to present proof of its own." Indeed, "[t]rial courts may act upon requests for legal expenses without a fully developed record as long as the party opposing the request has been afforded a fair opportunity to cross-examine the requesting parties' witnesses and to present proof of its own on the issues." *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992) (citing *Kahn v. Kahn*, 756 S.W.2d 685, 696 (Tenn. 1988); *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988)). However, the issue with Husband's argument is that he never acted nor objected to the entry of the affidavit for attorney's fees as an exhibit. Moreover, Husband fails to point to any part in the hearing during which the trial court prevented him from questioning the veracity of Wife's attorney's fees. In *Sherrod*, the husband took issue with the trial court's awarding the wife attorney's fees because he had not "been able to accurately determine the amount of attorney fees incurred by [wife]." *Id.* at 784. There, the trial court held a hearing on the issue of attorney's fees where wife's attorney testified as to his hourly rate and submitted an affidavit showing fees incurred by wife pursuant to the litigation. *Id.* The trial court ultimately entered an order directing husband to pay wife's attorney's fees. *Id.* On appeal, this Court found the husband "did not object to the procedure used by the trial court to determine the amount of the attorney's fees award and did not insist on cross-examining [the wife's] lawyer or offering proof of his own." *Id.* at 785. Therefore, we found the trial court's award proper. *Id.* Similarly here, we note that Wife's attorney conducted a brief questioning of Wife upon entering an affidavit of attorney's fees as an

exhibit. Upon doing so, the trial court asked Husband if he had any objection to the entry of the affidavit as an exhibit, to which Husband replied in the negative. Although we note that Husband was proceeding pro se during the hearing, "courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003) (citing *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n. 4 (Tenn. Ct. App. 1995)). As such, here, Husband chose to represent himself at the divorce proceedings and thus was charged with the responsibility of questioning witnesses and cross-examining witnesses. Despite his status as a pro se defendant, we decline to find any error on the part of the trial court. Much like in *Sherrod*, Husband in this case did not object to the affidavit, nor did he insist on cross-examining Wife's attorney. "Our rules do not require that 'relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.'" *Bowers v. Bowers*, No. M2010-00311-COA-R3-CV, 2011 WL 1344258, at *6 (Tenn. Ct. App. Apr. 7, 2011) (quoting Tenn. R App. P. 36(a)). Accordingly, we reject Husband's contention that he was denied the opportunity to cross-examine witnesses or present proof of his own regarding Wife's attorney's fees.

*Whether Wife is Entitled to Her Attorney's Fees on Appeal*

Wife's sole issue for appeal concerns whether she is entitled to her attorney's fees on appeal. Specifically, she contends that Husband has simply reiterated identical arguments he made before the trial court and waived some of the same issues he now challenges before this Court.

"Whether to award attorney's fees on appeal is a matter within the sole discretion of this Court." *Luplow v. Luplow*, 450 S.W.3d 105, 119 (Tenn. Ct. App. 2014). In determining whether to award a party attorney's fees on appeal, "we consider the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that should be considered." *Ellis v. Ellis*, 621 S.W.3d 700, 709 (Tenn. Ct. App. 2019). Exercising our discretion, and in light of our decision herein, we decline to award Wife her attorney's fees on appeal.

## CONCLUSION

In light of the foregoing, we affirm in part and reverse in part.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE